S02G1697. PRINTIS v. BANKERS LIFE INSURANCE COMPANY.
(583 SE2d 22)

BENHAM, Justice.

We granted a writ of certiorari to the Court of Appeals to determine whether OCGA § 33-31-4 (a) permits, in connection with an installment loan, the sale of credit life insurance the premium for which is calculated on the total payments due through the life of the loan (i.e., gross balance decreasing term coverage), or whether the statute limits the type of credit life insurance sold to that for which the premium is calculated on the amount financed (i.e., net balance decreasing term coverage). In addressing this matter of first impression in Georgia, the Court of Appeals concluded that the statute authorized the sale of "total of payments" coverage, i.e., gross balance decreasing term coverage. *Printis v. Bankers Life Ins. Co.*, 256 Ga. App. 266 (568 SE2d 85) (2002). We agree and affirm the judgment of the Court of Appeals.

Appellant Felicia Printis purchased a car, a service agreement, and optional credit life and disability insurance for the 60-month term of her financing contract. After receiving credit for her trade-in and her down payment, Printis owed $20,711.45. Printis was informed that the finance charge resulting from her financing arrangement would be $2,117.95, making the total amount she would pay over the life of the loan $22,829.40. The credit life insurance provided by appellee Bankers Life Insurance Company and for which appellant was charged a premium was for $22,829.40. In January 2000, Printis filed a complaint in which she claimed the amount of life insurance for which she should have been charged was the amount of her indebtedness ($20,711.45 plus accrued interest) rather than $22,829.40. She sought a refund of the difference in premium for the life insurance ($47.65) and the finance charges attributable to the difference, and claimed that the insurer had committed a RICO violation (mail fraud and wire fraud) by "conspiring with its agents and auto dealers to sell this illegal, unnecessary, and excessive insurance coverage at greater expense to the consumer. . . ." The trial

court granted judgment on the pleadings to Bankers Life, and the Court of Appeals affirmed that judgment.

The amount of insurance on the life of a debtor purchased pursuant to or in connection with a specific loan or credit transaction is statutorily limited by OCGA § 33-31-4 (a),[1] which states

> The amount of credit life insurance shall not exceed the indebtedness. Where indebtedness repayable in substantially equal installments is secured by an individual policy of credit life insurance, the amount of insurance shall not exceed the approximate unpaid indebtedness on the date of death and, where secured by a group policy of credit life insurance, shall not exceed the exact amount of unpaid indebtedness on that date.

"Indebtedness" is statutorily defined as "the total amount payable by a debtor to a creditor in connection with a loan or other credit transaction." OCGA § 33-31-1 (5). When the statutory definition of "indebtedness" is applied to the first sentence of OCGA § 33-31-4 (a), it is clear that "total of payments" insurance coverage is authorized. The second sentence of § 33-31-4 (a) is applicable to transactions such as the one before us, i.e., where the indebtedness is secured by a policy of credit life insurance and is repayable in substantially equal installments. In such transactions, the amount of credit life insurance allowed may not exceed the approximate unpaid indebtedness on the date of death or the exact amount of unpaid indebtedness on the date of death, depending on whether the insurance policy is an individual or group policy. Since the second sentence mandates that the amount of insurance coverage cannot exceed the unpaid indebtedness on the date of death, the second sentence authorizes the credit life insurance coverage to be "decreasing term coverage." Anthony Rollo, "A Primer on Consumer Credit Insurance," 54 Consumer Fin. Law Quarterly Report 52, 53 (Spring 2000) ("A common-type of credit life insurance sold with closed-end credit is decreasing (declining) term credit life insurance, where the initial amount of coverage equals the amount borrowed plus the finance charge . . . and the amount of coverage decreases as the balance of the loan declines.").

The policy issued by Bankers Life to Printis provided "total of

---

[1] OCGA § 33-31-4 is a part of the Georgia Insurance Code of 1960, in which the General Assembly recognized the debtor/insured had an interest in the credit life insurance policy issued on the debtor's life in connection with a credit transaction, a marked departure from earlier law in which the insured was deemed to have no interest in the insurance policy. *Betts v. Brown*, 219 Ga. 782, 787 (136 SE2d 365) (1964). See also *Pioneer Homeowners Life Ins. Co. v. Hogan*, 110 Ga. App. 887, 888 (140 SE2d 212) (1965).

payments" coverage that decreased in amount every month by the amount of one monthly payment ("gross balance decreasing coverage"). Printis contends the second sentence of OCGA § 33-31-4 (a) limits the maximum amount of insurance coverage to that which Printis would owe on the date she died during the term of the loan, i.e., the remaining principal balance plus the interest which had accrued since the last payment ("net balance decreasing coverage"). However, § 33-31-4 (a)'s second sentence clearly states the amount of insurance shall not exceed the unpaid "indebtedness" on the date of death, and "indebtedness" is statutorily defined as "the total amount payable by a debtor to a creditor in connection with a . . . credit transaction." Application of the statutory definition of indebtedness to the second sentence of § 33-31-4 (a) results in the conclusion that the allowable amount of insurance coverage on the date of death is the unpaid portion of the total of payments, an amount that would include the remaining amount financed plus unearned interest.[2] Since the insurance policy's coverage decreased every month by the amount of a monthly payment, the insurance coverage at the date of death would be equal to the unpaid portion of the total of payments. See *Liberty Bank & Trust Co. v. Splane*, 959 P2d 600, 603 (Okla. Civ. App. 1998). Appellant would have the maximum authorized amount of insurance be the "pay-off balance" on the date of death, which is an amount less than the unpaid total of payments since the latter would include unearned finance charges. However, OCGA § 33-31-4 (a) does not limit the amount of credit life insurance that can be sold to the "pay-off balance." Had the General Assembly wished to limit the maximum amount of credit life insurance that could be sold to the "pay-off balance," it could have enacted a statute reflecting that intent. See, e.g., Al. St. § 5-19-20 (b) (2) (Ala.);[3] AS 21.57.040 (a) (1)

---

[2] This practice [of selling gross balance decreasing term coverage] has been challenged on the theory that it over-insures the loan because the gross amount includes unearned interest, resulting in a premium being based on an amount greater than that for which the consumer is liable to the lender. However, gross coverage is sanctioned by the Uniform Consumer Credit Code and model legislation promulgated by the N[ational] A[ssociation of] I[nsurance] C[ommissioners]. Gross coverage pays to the creditor the remaining balance owed on the debt — and refunds the unearned interest to the borrower.
Rollo, 54 Consumer Fin. Law Quarterly Report at 63. We note that the issue in this case is the maximum amount of life insurance the creditor may sell, not the amount of the insurance proceeds actually disbursed to the creditor, with the excess paid to the debtor's beneficiary or the debtor's estate. OCGA § 33-31-7 (b).

[3] If the consumer credit transaction is scheduled to be repaid in substantially equal installments which include a portion of the amount financed, the amount of credit life insurance at any time shall not exceed the greater of the approximate unpaid balance of the debt, excluding unearned finance charges, if any, or the approximate unpaid scheduled balance of the debt, excluding unearned finance charges, if any, plus the amount of one scheduled payment.

(Alaska);[4] 24-A M.R.S.A. § 2855 (1) (A) (Maine);[5] M.G.L.A. 255 § 12G (Mass.);[6] M.S.A. § 62B.04 (sub. 1) (1) (Minn.);[7] N.C.G.S.A. § 58-57-15 (a) (1) (N.C.);[8] Wa. St. 31.04.125 (4) (Wash.).[9] Instead, the General Assembly enacted legislation similar to Uniform Consumer Credit Code § 4.202 (1) (a) (1974)[10] and that enacted by the majority of states.[11] See, e.g., A.R.S. § 20-1605 (A), (B) (Ariz.); C.R.S.A. § 10-10-106 (1) (Colo.); H.R.S. § 431:10B-105 (a) (1) (Hawaii); I.C. § 41-2306 (1) (a), (b) (Idaho); 215 I.L.C.S. 5/155.54 (a) (Ill.); I.C. § 27-8-4-4 (Sec. 4.A) (Ind.); K.S.A. § 16a-4-202 (1) (a) (Kan.); K.R.S. § 304.19-040 (1) (Ky.); V.A.M.S. 385.030 (1) (Mo.); M.C.A. 33-21-202 (1) (Mont.); U.C.A. § 31A-22-804 (1) (Utah); W.S.A. 424.208 (1) (Wisc.); W.S. § 26-21-104 (a), (b) (Wyo.).

We conclude, as did the Court of Appeals and the trial court, that appellant's complaint, "predicated upon her contention that Bankers Life illegally calculated the premium for her credit life insurance policy by including the finance charge with the principal in ascertaining the total amount payable," failed to state a cause of action, entitling appellee to judgment as a matter of law. OCGA § 9-11-12 (c). *Printis v. Bankers Life Ins. Co.*, supra, 256 Ga. App. at 268.

---

[4] "The amount of coverage for credit life insurance payable at the time of loss . . . may not exceed the greater of the actual net debt or the scheduled net debt. . . ."

[5] "The amount of credit life insurance shall at no time exceed the unpaid amount financed plus earned interest and an allowance for delinquencies as determined by the superintendent. . . ."

[6] "The amount of said [credit life] insurance shall at no time exceed the greater of the scheduled or actual amount owing on the loan exclusive of unearned finance charges."

[7] The initial amount of credit life insurance shall not exceed the amount of principal repayable under the contract of indebtedness plus an amount equal to one monthly payment. Thereafter, if the indebtedness is repayable in substantially equal installments according to a predetermined schedule, the amount of insurance shall not exceed the scheduled indebtedness plus one monthly payment or actual amount of indebtedness, whichever is greater.

[8] The amount of credit life insurance shall not exceed the amount of unpaid indebtedness as it exists from time to time, less any unearned interest or finance charges; provided, however, that if the amount of credit insurance is based on a predetermined schedule, the amount of credit insurance shall not exceed the scheduled amount of unpaid indebtedness, less any unearned interest or finance charges, plus an amount equal to three monthly installments or the equivalent thereof.

[9] "No licensee may provide credit life or disability insurance in an amount greater than that required to pay off the total balance owing on the date of the borrower's death net of refunds in the case of credit life insurance. . . ."

[10] "[I]n the case of consumer credit insurance providing life coverage, the amount of insurance may not initially exceed the debt and, if the debt is payable in installments, may not exceed at any time the greater of the scheduled or actual amount of the debt. . . ."

[11] These statutes provide that the initial amount of credit life insurance is not to exceed the indebtedness and, if the indebtedness is to be repaid in substantially equal sums, the amount of insurance is not to exceed at any time the scheduled or actual amount of unpaid indebtedness, whichever is greater. The "indebtedness" is statutorily defined as the total amount payable in connection with the credit transaction.

*Judgment affirmed. Fletcher, C. J., Sears, P. J., Carley, Thompson and Hines, JJ., and Judge Fred Bishop concur. Hunstein, J., disqualified.*

DECIDED JUNE 30, 2003.

*Sidney L. Moore, Jr.,* for appellant.
*Sutherland, Asbill & Brennan, Thomas M. Byrne, Thomas W. Curvin,* for appellee.