## A03A0397. BARRETT v. SANDERS.
### (584 SE2d 676)

ADAMS, Judge.

Several witnesses and two alleged accomplices gave statements implicating Fulton County Deputy Sheriff Dexter Sanders in a high-profile series of home invasions and burglaries made by three individuals in sheriff's uniforms who entered homes on the pretense of serving what ultimately proved to be fake warrants. Sanders was placed on indefinite suspension and was charged with felonies in three counties, but was never convicted. He later sought reinstatement as a deputy sheriff, but his employment was terminated. Sanders lost on appeal to the Fulton County Personnel Board but prevailed on his petition for certiorari to the Fulton County Superior Court, and his employment was reinstated with back pay. Sheriff Jacquelyn Barrett now appeals.

The record shows that in May 1994, the Fulton County Sheriff's Department began receiving complaints that three men dressed in sheriff's office uniforms had entered several homes in the metro Atlanta area on the pretense of serving warrants. The men took valuables from several homes. The Georgia Bureau of Investigation began to look into the matter.

Fingerprints found in one of the homes led the GBI to Fulton County Deputy Reginald Jones, who, like Sanders, worked in the jail division of the sheriff's department. Jones gave a detailed statement in which he stated that he, Sanders, and a man named Jerome Young engaged in a series of attempts to steal money and valuables from the homes of people that they thought were drug dealers by searching the homes under the apparent authority of sheriff's uniforms and falsified search or arrest warrants. Jones said that the scheme was

Sanders's idea, that Sanders often carried a weapon, and that Sanders did most of the talking at each house.

Jerome Young, a former roommate of Sanders, also gave a statement in which he gave, in great detail, essentially the same story as Jones, and he also named Sanders as the third accomplice. Both Jones and Young described many of the home invasions and often described what each of the three had been wearing, stated who was carrying a gun, indicated who made statements to the home occupants, and indicated what was said.

The GBI took statements from many of the witnesses to these home invasions, and several identified Sanders as one of the accomplices by picking him out of a photographic lineup. A confidential informant named Sanders as one of those involved. An inmate at the jail where Sanders worked gave a statement (prior to the statements by Jones and Young) about a conversation that he overheard between Sanders and his cellmate, in which Sanders bragged about stealing money by making up bogus search warrants. The inmate had come forward on the same day an article appeared in the newspaper about the investigation. Finally, an acquaintance of Sanders gave a statement in which he reported that Sanders told him that he obtained money to buy a nice car by stealing money from drug dealers using fake warrants to gain entry into their homes.

In 1994, Sanders was arrested in Clayton, DeKalb, and Fulton Counties for various felonies, including false imprisonment, kidnapping, and burglary. He was placed on indefinite suspension without pay based on these charges and on the allegation that he had violated his oath of office. The letter cited and quoted Fulton County Personnel Regulations 1800-2-Art. 3 (A) and (B).

In Clayton County, Deputy Jones pled guilty, but a jury acquitted Sanders on all counts. In DeKalb County, Jones again pled guilty, but Sanders's case was dead docketed on May 20, 1998, on the grounds that the Fulton County case had stronger evidence. In Fulton County, after 11 separate appearances on the trial calendar, the State announced that it could not locate the file. The Fulton court dismissed the charges against Sanders on December 7, 1998, for failure to prosecute.

Afterward, Sanders requested that he be reinstated to his position with back pay. Sheriff Barrett sent a letter to Fulton County Manager Cecilia Hunter recommending that, pursuant to the county manager's authority, Sanders's request be denied but that he be given back pay from the date of the order dismissing the Fulton County case through his date of separation. Sheriff Barrett sent a second letter to Hunter recommending that Sanders be terminated for the reason that if the case had gone to trial, "the evidence would have been overwhelming for a conviction." On February 12 and 16,

1999, Hunter approved Sheriff Barrett's recommendations. On February 18, 1999, Sheriff Barrett sent a letter to Sanders terminating him with the aforementioned back pay. The letter cited subsection "d" of Personnel Regulation 1800-2-Art. 3 (A) (1).

Sanders appealed to the Fulton County Personnel Board. The parties agreed that the matter would be submitted to the board on the record and briefs. The board found that the county manager's decision was not based on personal, political, or religious reasons, and it upheld the decision. The superior court, on certiorari, reversed.

Although the trial court's order did not explain its reasoning, the court stated its conclusion during oral argument. The court held that the applicable personnel regulation upon which the board relied was "arbitrary and capricious." Whether an administrative board abused its discretion by acting arbitrarily and capriciously is a question of law to be addressed de novo by the appellate courts. *Carnes v. Charlock Investments (USA)*, 258 Ga. 771, 772 (1), n. 1 (373 SE2d 742) (1988).[1]

1. Sheriff Barrett contends the trial court ignored the fact that there was sufficient evidence in the record to support the decision of the board. We disagree. The trial court did not base its decision on a finding that the board's decision was not supported by substantial evidence. Rather, the court held that allowing the county manager to terminate Sanders under the discretionary clause of Personnel Regulation 1800-2-Art. 3 (A) (1) (d) was arbitrary and capricious, which is a question of law.

2. Sheriff Barrett contends the trial court erred by concluding that Personnel Regulation 1800-2-Art. 3 (A) (1) (d) did not provide the authority to terminate or not reinstate Sanders.

Sanders argues here, and argued in the superior court, that construing the Fulton County Personnel Regulations as a whole shows that the county manager and the sheriff did not have discretion to terminate or not reinstate Sanders. But Sanders failed to prove the existence of or the contents of the Fulton County Personnel Regulations. Where county personnel regulations are relied upon, they "must be pleaded and proved in the trial court, and absent a properly admitted copy of the [regulations], neither the trial court nor this court may take judicial notice of [their] existence." *In the Interest of*

---

[1] See, e.g., *Dept. of Corrections v. Shaw*, 217 Ga. App. 33, 36 (2) (456 SE2d 628) (1995) ("The foregoing demonstrates the dismissals were not imposed arbitrarily and capriciously."); *State Personnel Bd. v. Morton*, 198 Ga. App. 845, 848 (403 SE2d 455) (1991) ("We further agree with the superior court that the Board arbitrarily and capriciously denied appellee an evidentiary hearing. . . ."); *Dollar v. Dept. of Human Resources &c.*, 196 Ga. App. 698, 701 (2) (396 SE2d 913) (1990) ("We do not find this reasoning to be arbitrary or capricious. . . .").

*J. T.*, 239 Ga. App. 756, 757-758 (521 SE2d 862) (1999). See also *Childers v. Richmond County*, 266 Ga. 276, 277 (467 SE2d 176) (1996) (the appellate courts cannot take judicial notice of city or county ordinances; trial court erred by basing decision on ordinance not properly before the court); *City of Atlanta v. Lambright*, 205 Ga. App. 558, 559 (1) (423 SE2d 265) (1992) (appellate court unable to examine scope of board's discretion without properly admitted personnel ordinance).

The record before us does not contain a copy of the regulations relied on by Sanders, and nowhere in the superior court transcript does it appear that Sanders attempted to introduce the regulations into evidence. Because Sanders failed to show the trial court that the personnel regulations existed, he failed to show that the county manager and/or the sheriff did not have the requisite authority under the regulations to terminate Sanders under the circumstances of this case. Accordingly, the trial court erred by concluding that under the regulations, the county manager and the sheriff did not have authority to terminate Sanders.

Without the regulations, we can only look to the state legislation that created the Fulton County Personnel Board and the Fulton County merit system in order to determine whether the sheriff and county manager had the necessary authority. That legislation provides that the sheriff may terminate a classified employee for sufficient, just, and proper cause:

> An appointing authority (department head) may dismiss, demote, suspend, or otherwise discipline any Fulton County employee for sufficient, just, and proper cause as defined and specified by the personnel board, including but not limited to the willful violation of any provision of this Act or the personnel regulations thereunder.

Ga. L. 1982, p. 4896, § 9, as amended by Ga. L. 1988, p. 3689.[2]

Here, construing the facts in favor of the personnel board, the board had substantial evidence supporting its decision terminating Sanders.[3] Both accomplices, several victims, and others all gave statements directly implicating Sanders in the home-invasion ring. Absent any applicable regulations, the fact that he has never been convicted of criminal charges arising out of the same conduct is irrel-

---

[2] Sheriff Barrett is the appointing authority for her department. See *Mayo v. Fulton County*, 220 Ga. App. 825, 826 (1) (470 SE2d 258) (1996).

[3] In ruling on a petition for certiorari to an inferior judicial body, such as a personnel board, the superior court is required to apply the substantial evidence test. OCGA § 5-4-12 (b); *Lambright*, 205 Ga. App. at 559 (1).

evant to the issue of whether he is subject to discipline or discharge from his position as a police officer as a result of this conduct. See *Lambright*, 205 Ga. App. at 559 (1). See also *Dept. of Corrections v. Glisson*, 235 Ga. App. 51, 52 (508 SE2d 714) (1998).

This is especially true here because the DeKalb County case against Sanders was dead docketed. Dead docketing is a procedural device by which "the prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court. Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor. A case is still pending which can be called for trial at the judge's pleasure. . . ." (Citations and punctuation omitted.) *State v. Creel*, 216 Ga. App. 394, 395 (454 SE2d 804) (1995).

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 30, 2003 — 

*Rolesia D. Butler*, for appellant.
*Fain, Major, Wiley & Brennan, Thomas E. Brennan*, for appellee.