A08A1045. CAROLINA TOBACCO COMPANY v. BAKER.
(670 SE2d 811)

MIKELL, Judge.

This case of first impression involves the interpretation of the term "tobacco product manufacturer" in the Georgia Qualifying Statute,[1] which was enacted as a result of nationwide litigation brought by the states over public health costs associated with smoking. We granted Carolina Tobacco Company's ("Carolina") application for discretionary appeal to review the superior court's affirmance of the Attorney General's ("AG") ruling that Carolina was not a "tobacco product manufacturer" under OCGA § 10-13-2 (9)[2] and therefore could not sell cigarettes under its "Roger" brand in Georgia. For the reasons set forth below, we agree with the AG's determination that Carolina was not the "tobacco product manufacturer" of Roger cigarettes prior to 2005. However, because the AG

---

[1] OCGA §§ 10-13-1 through 10-13-4.

[2] OCGA § 10-13-2 (9) (A) defines "tobacco product manufacturer," in pertinent part, as "an entity that . . . directly (and not exclusively through any affiliate)[,] . . . [m]anufactures cigarettes anywhere that such manufacturer intends to be sold in the United States."

incorrectly decided that he retained no discretion to permit Carolina to cure certain certification requirements in order to sell Roger cigarettes in Georgia after 2005, we reverse and remand this case for proceedings consistent with this opinion.

The facts are not in dispute. David Redmond formed Carolina in 1999 to manufacture and sell Roger cigarettes. Until April 2003, Carolina outsourced the production of the cigarettes to House of Prince Riga ("HOPR"), a Latvian company. During the thirteen-month period between July 2003 and August 2004, Carolina contracted with two South African companies, African American Tobacco (PTY), Ltd. ("AAT"), and Mastermind Tobacco S.A. (PTY), Ltd. ("Mastermind"), to produce the cigarettes.[3] Mastermind fabricated the cigarettes pursuant to the AAT contract. It is undisputed that at all times, Carolina owned the trademark to Roger cigarettes; that the cigarettes were assembled in Roger packaging; that once the cigarettes were assembled, Carolina picked them up and AAT had no further involvement with them; that Carolina shipped them to the United States, handled customs and paid excise taxes, and arranged to have them shipped to distributers in the United States; and that neither AAT nor Mastermind could sell Roger cigarettes. In late August 2004, AAT filed for liquidation, and Roger cigarettes were not produced thereafter until February 2005. Carolina then opened its own facility in South Africa and has produced the cigarettes itself since 2005.

In 1998, the year before Carolina was formed, forty-six states, including Georgia, and the District of Columbia, the Commonwealth of Puerto Rico and four territories, entered into a master settlement agreement (the "MSA"),[4] with four major tobacco companies[5] to resolve the litigation brought by the states over public health costs associated with smoking. The MSA provided for the settling states to enact legislation, known as Qualifying Statutes, which required cigarette manufacturers who did not sign the MSA, defined therein as nonparticipating manufacturers, to make annual deposits into an escrow account to cover public health costs related to smoking.[6] The payments are based on market share. Carolina is a nonparticipating manufacturer.

---

[3] Issues with regard to cigarettes fabricated by HOPR have been settled, and only the 13-month period remains in dispute.

[4] The MSA may be viewed at http://www.naag.org/backpages/naag/tobacco/msa/msa-pdf/1109185724_1032468605_cigmsa.pdf/file_view.

[5] The "Original Participating Manufacturers" who were signatories to the MSA were Philip Morris, Inc., R. J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company. See MSA II (hh), p. 7.

[6] See MSA IX (d) (2) (E), p. 52.

The Georgia legislature enacted a Qualifying Statute or Escrow Statute, called "Tobacco Product Manufacturers,"[7] as well as complementary legislation, called "Master Settlement Agreement Enhancements,"[8] to help enforce the Qualifying Statute.[9] The Enhancements require nonparticipating manufacturers who plan to sell cigarettes in Georgia to submit to the AG an annual certification stating that they have paid into an escrow fund a specified amount per unit share sold in order to offset the anticipated costs of future litigation.[10] The Enhancements also require the AG to maintain a directory of all manufacturers who have complied with the certification and all brand families listed therein.[11] If a brand is not listed in the directory, then it may not be sold in Georgia.[12]

The AG listed Roger cigarettes on the directory briefly, from September 2004 until January 2005, but then informed Carolina of his intent to remove the brand within 30 days. The AG concluded that, even though Carolina made the necessary escrow payments and filed the certification forms, Carolina did not qualify as a "tobacco product manufacturer" because it outsourced the fabrication of Roger cigarettes to AAT and Mastermind. The AG reasoned that those entities were the actual "tobacco product manufacturers" who were required to make the payments and file the forms in their own names. In accordance with OCGA § 10-13A-9, Carolina appealed the AG's decision to the Office of State Administrative Hearings.

Ruling on cross-motions for summary judgment, an administrative law judge ("ALJ") concluded that Carolina met the definition of a "tobacco product manufacturer."[13] The ALJ focused on the word "manufacturer" in OCGA § 10-13-2 (9) and determined that it was ambiguous. To construe the statute, the ALJ looked to the expressed legislative intent in the Qualifying Statute, which is, in part, "to require that such manufacturers establish a reserve fund to guarantee a source of compensation."[14] The ALJ decided that the legislative intent would be best served by construing the word "manufacturer" as it is used in our product liability laws.[15] "One who *merely* sells a

---

[7] OCGA §§ 10-13-1 through 10-13-4.

[8] OCGA §§ 10-13A-1 through 10-13A-9.

[9] See COMMERCE AND TRADE: Enforcement of Master Settlement Agreement: Require Certifications by Certain Tobacco Manufacturers; Provide for a Directory Database of Certified Tobacco Manufacturers; Establish a Prohibition Against Sales by Tobacco Manufacturers not in the Directory Database, 20 Ga. St. U. L. Rev. 51 (2003).

[10] OCGA §§ 10-13A-3 (a); 10-13-3.

[11] OCGA § 10-13A-4 (a).

[12] OCGA § 10-13A-5.

[13] OCGA § 10-13-2 (9) (A).

[14] OCGA § 10-13-1 (f).

[15] See OCGA §§ 51-1-11; 51-1-11.1.

product is a 'product seller' but one who sells a product and has 'input' or is *actively* involved in the conception, design, or specification of the product is a manufacturer."[16] Thus, because Carolina "fully controlled the plan, intention, design, specifications and formulation of" Roger cigarettes, the ALJ determined that Carolina was a "manufacturer." Therefore, the ALJ concluded that during the period in dispute, Carolina was the "tobacco product manufacturer" of the cigarettes.

In accordance with the Administrative Procedure Act ("APA"), OCGA § 50-13-1 et seq., the AG appealed the decision to himself.[17] The AG reasoned, in part, that by defining the term "tobacco product manufacturer" as an "entity that . . . *directly* . . . [m]anufactures cigarettes,"[18] the legislature unambiguously intended the term to mean the entity that physically fabricates the cigarettes. Accordingly, the AG reversed the ALJ's decision. Carolina petitioned the superior court for review, and the court affirmed. We granted Carolina's application for discretionary review to determine whether the superior court erred in affirming the final agency decision.

1. At the outset, we note that the superior court is authorized to reverse or modify the final agency decision only in certain limited circumstances, such as when

> substantial rights of the appellant have been prejudiced because the administrative findings, . . . conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[19]

"In an appeal from a superior court's review of a final agency decision, our function is to determine whether the superior court has in its own final ruling committed an error of law."[20] And, whether an agency abused its discretion by acting arbitrarily and capriciously is

---

[16] (Citations omitted; emphasis in original.) *Nelson v. C. M. City, Inc.*, 218 Ga. App. 850, 852-853 (2) (463 SE2d 902) (1995), rev'd in part, *NEC Technologies v. Nelson*, 267 Ga. 390 (478 SE2d 769) (1996), further explained, *Nelson v. C. M. City, Inc.*, 229 Ga. App. 141 (493 SE2d 569) (1997).

[17] See OCGA § 50-13-41.

[18] OCGA § 10-13-2 (9) (A).

[19] OCGA § 50-13-19 (h).

[20] (Citation, punctuation and footnote omitted.) *Gladowski v. Dept. of Family &c. Svcs.*,

a question of law, which we address de novo.[21]

The threshold issue on appeal is whether the term "tobacco product manufacturer," as defined by the legislature in OCGA § 10-13-2 (9), is plain and unequivocal, as the AG contends, or whether, as Carolina argues, the term is ambiguous. As explained below, we agree with the AG that the term is plain and unequivocal. We begin our analysis with the cardinal rule in statutory construction, which

> is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose. Although the legislative intent prevails over the literal import of words, where a . . . statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.[22]

In the case at bar, we first examine the statute to glean its meaning.

> "Tobacco product manufacturer" means an entity that after the date of enactment of this chapter *directly* (and not exclusively through any affiliate):
>
> (A) Manufactures cigarettes anywhere that such manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer . . . ;
>
> (B) Is the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States; or

---

281 Ga. App. 299 (635 SE2d 886) (2006); *Dept. of Public Safety v. Bafford*, 223 Ga. App. 639, 640 (478 SE2d 444) (1996).

   [21] *Barrett v. Sanders*, 262 Ga. App. 63, 65 (584 SE2d 676) (2003).

   [22] (Citations and punctuation omitted.) *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Accord *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 705 (544 SE2d 158) (2001) ("The use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction, and indeed forbids an interpretation of the meaning of the words employed by the General Assembly") (citation and punctuation omitted). See also *Printis v. Bankers Life Ins. Co.*, 256 Ga. App. 266, 267 (568 SE2d 85) (2002), aff'd, 276 Ga. 697 (583 SE2d 22) (2003).

(C) Becomes a successor of an entity described in subparagraph (A) or (B). . . .

The term "tobacco product manufacturer" shall not include an affiliate of a tobacco product manufacturer unless such affiliate itself falls within subparagraphs (A) through (C) of this paragraph.[23]

The statute does not define the term "manufactures." However, "words of a statute are to be taken in their natural and ordinary signification."[24] Black's Law Dictionary defines "manufacturer" as: "[a] person or entity engaged in producing or assembling new products."[25] "Directly" means "without any intervening agency or instrumentality."[26] Thus, by using the adverb "directly" to modify "manufactures," the legislature clearly intended to define as tobacco product manufacturers only those entities that physically fabricate cigarettes themselves. Otherwise, the words "directly (and not exclusively through any affiliate)" would be mere surplusage. "It is contrary to the generally accepted principles for construing statutes to 'read out' any part of the statute as 'mere surplusage' unless there is a clear reason for doing so."[27] Further, the AG's own regulations adopted in 2004 define "tobacco product manufacturer" as "any entity that . . . [p]hysically manufactures cigarettes anywhere in the world that are intended for sale in the United States."[28]

When an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch.[29]

---

[23] (Emphasis supplied.) OCGA § 10-13-2 (9).

[24] *Bahadori v. Nat. Union Fire Ins. Co.*, 270 Ga. 203, 204 (1) (507 SE2d 467) (1998), citing *Thompson v. Eastern Air Lines*, 200 Ga. 216, 221 (39 SE2d 225) (1946). See also OCGA § 1-3-1 (b).

[25] Black's Law Dictionary (7th ed. 1999), p. 977. See also Webster's Third New International Dictionary ("manufacture" means "to make from raw materials") (3d ed. 1976), p. 1378.

[26] Webster's, supra at p. 641.

[27] (Citations omitted.) *Porter v. Food Giant*, 198 Ga. App. 736, 738 (1) (402 SE2d 766) (1991).

[28] Ga. Comp. R. & Regs. r. 60-1-1-.03 (9) (a).

[29] (Citation omitted.) *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159 (2) (664 SE2d 223) (2008); *Printis*, supra at 268; *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 718 (5) (463 SE2d 163) (1995).

Thus, even if an ambiguity existed in the statute, we would defer to the AG's interpretation as stated in the regulation.

Finally, had the legislature wished to give the term "manufacturer" in the Qualifying Statute the same meaning as it has in our product liability laws, then the legislature could have used the same definition. The Code contains many examples in which the legislature has chosen to define "manufacturer."[30] Thus, in the context of the Qualifying Statute, "[w]e must presume that its failure to [apply the product liability definition] was a matter of considered choice."[31] Moreover, our product liability laws contain complex distinctions between a "manufacturer" subject to strict liability[32] and a "product seller" who is not,[33] and the concept of such "manufacturer" has been further refined by case law to mean one who is "actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury."[34] We will not engraft this

---

[30] See, e.g., the newly enacted Georgia Fire Safety Standard and Firefighter Protection Act, which defines "manufacturer" as "[a]ny entity which manufactures, makes, produces, or causes to be produced cigarettes sold in this state or cigarettes said entity intends to be sold in this state." OCGA § 25-14-2 (4) (A). See also OCGA §§ 8-2-111 (6) (" 'Manufacture' means the process of making, fabricating, constructing, forming, or assembling a product from raw, unfinished, or semifinished materials"); 10-1-676 (3) (" 'Manufacturer' means any person, firm, association, corporation, or trust, . . . that fabricates, manufactures, or assembles new and unused marine products"); 10-1-782 (14) (" 'Manufacturer' means any person engaged in the business of constructing or assembling new motor vehicles or engaged in the business of importing or receiving imports of new motor vehicles into the United States"); 10-1-871 (9) (" 'Manufacturer' means a person who manufactures or assembles assistive technology devices and agents of that person, including an importer, a distributor, factory branch, distributor branch, and any warrantors"); 13-8-32 (12) (" 'Manufacturer' means any person engaged in the business of manufacturing or assembling farm equipment or implements or parts); 16-13-21 (15) (" 'Manufacture' means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance); 48-11-1 (10) (" 'Cigarette manufacturer' means any person who manufactures, fabricates, assembles, processes, or labels a finished cigarette").

[31] *Hollowell*, supra at 683 (d).

[32] See OCGA §§ 51-1-11; 51-1-11.1. For example, a "product seller" is statutorily defined as

a person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce. This definition does not include a manufacturer which, because of certain activities, may additionally be included within all or a portion of the definition of a product seller.

OCGA § 51-1-11.1 (a).

[33] OCGA § 51-1-11.1 (b).

[34] (Citation omitted.) *Davenport v. Cummins Alabama, Inc.*, 284 Ga. App. 666, 671 (1) (644 SE2d 503) (2007); *Buchan v. Lawrence Metal Products*, 270 Ga. App. 517, 520-521 (2) (607 SE2d 153) (2004) (evidence that a seller of a crowd control system had an active role in the design and production of the product precluded summary judgment on the issue of whether it was a manufacturer under OCGA § 51-1-11 (b)); *Nelson*, supra.

definition onto the Qualifying Statute absent a clear expression of legislative intent to do so.

Carolina urges us to follow *Carter v. Carolina Tobacco Co.*,[35] in which the Indiana Court of Appeals held that Carolina was a tobacco product manufacturer for the purpose of that state's Qualifying Statute.[36] But that holding affirmed a judgment issued after a bench trial[37] in which the Indiana AG's own expert witness testified that an entity that controls a facility and its employees can be said to have directly manufactured the cigarettes and may qualify as a tobacco product manufacturer.[38] The witness conceded that such entities are permitted to sell cigarettes in Indiana.[39] Carolina's expert witness testified that, since its inception, the company directly manufactured Roger cigarettes as the term is used in the context of international manufacturing.[40] Thus, based on the totality of the evidence presented at trial, and the state's broad statutory definition of "manufacturer,"[41] the Indiana appeals court concluded that the trial court properly determined that Carolina was the "manufacturer" of Roger cigarettes.[42]

We do not follow the Indiana court because our ruling is not based, as in *Carter*, on the totality of the evidence adduced at a trial. There is no factual finding in this case that Carolina "directly manufactured" the cigarettes as the term is used in OCGA § 10-13-2 (9). Furthermore, at least one other court has ruled against Carolina on this question for the same reasons we do in this case, although not in a published opinion.[43] And a Pennsylvania court rejected its AG's argument that an entity that requests the manufacture of a product is itself a manufacturer, recognizing the "bright-line distinction" drawn between manufacturers and importers.[44]

Having discerned the meaning of tobacco product manufacturer, we must ensure that it comports with the intent of the Qualifying Statute, which the legislature has expressed as follows:

---

[35] 873 NE2d 611 (Ind. App. 2007).

[36] See Ind. Code Ann. § 24-3-3-10.

[37] *Carter*, supra at 622.

[38] Id. at 628.

[39] Id.

[40] Id. at 620.

[41] Indiana's product liability statute defines "manufacturer" as "a person or an entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." Ind. Code Ann. § 34-6-2-77.

[42] *Carter*, supra at 629.

[43] See *Carolina Tobacco Co. v. Petro*, 2006 Ohio 1205, Par. 34, 2006 Ohio App. LEXIS 1082 (2006).

[44] *Commonwealth v. Jash Intl.*, 847 A2d 125, 131-132 (Pa. Commw. 2004).

> It is the policy of the state that financial burdens imposed on the state by cigarette smoking be borne by tobacco product manufacturers rather than by the state. . . . It would be contrary to the policy of the state if tobacco product manufacturers who determine not to enter into such a settlement could use a resulting cost advantage to derive large, short-term profits in the years before liability may arise without ensuring that the state will have an eventual source of recovery from them if they are proven to have acted culpably. It is thus in the interest of the state to require that such manufacturers establish a reserve fund to guarantee a source of compensation.[45]

Carolina argues that defining "tobacco product manufacturer" as the fabricating entity defeats the legislative intent in this case because it will require the state to refund the escrow deposits Carolina previously made for the Roger brand, and the two South African entities who made the cigarettes will not be able to make any escrow deposits because they are defunct. Therefore, there will be no funds set aside to cover claims relating to the use of Roger cigarettes. The AG concedes that approximately $42,000 would have to be refunded to Carolina in the event he prevails on appeal. However, the AG argues, as he concluded in his decision, that by placing legal responsibility on the fabricator, a seller will not be able to avoid escrow obligations by forming a shell corporation to act as the manufacturer, defaulting on its escrow obligations, and then replacing it with another shell corporation. We cannot say that this reasoning is unsound. A purpose of the escrow fund is to prevent the manufacturers who choose not to enter into the MSA from deriving large, short-term profits over a number of years without escrowing funds to provide the state with a source of recovery, if liability attaches. We believe that ensuring compliance by a single entity serves this purpose and does not lead to "absurd or wholly impracticable consequences."[46] It is the responsibility of the entity seeking to market its cigarettes in Georgia to ensure that it meets the statutory definition of "tobacco product manufacturer." Accordingly, the conclusion we reach today does not conflict with the legislature's intent.

2. Carolina further argues that Roger cigarettes should not be banned from the directory because the AG concedes that Carolina has been the "tobacco product manufacturer" of that brand since

YALE LAW LIBRARY

---

[45] OCGA § 10-13-1 (d), (f).

[46] (Citations and punctuation omitted.) *Hollowell*, supra at 681. Accord *Cotten v. Phillips*, 280 Ga. App. 280, 284 (633 SE2d 655) (2006).

124

2005 and has made the required escrow deposits.[47] The AG argues that even if Carolina could be permitted to satisfy the escrow obligations of its now-defunct subcontractors,[48] the failure of those entities to file mandatory annual certifications requires the exclusion of Roger cigarettes from the directory. The AG contends that he has no discretion in the matter. The statute states otherwise.

The pertinent Code section, OCGA § 10-13A-4 (b), provides:

> The [AG] shall not include or retain in such directory the name or brand families of any nonparticipating manufacturer that has failed to provide the required certification or whose certification the [AG] determines is not in compliance with subsection (c) of Code Section 10-13A-3, *unless the [AG] has determined that such violation has been cured to the satisfaction of the [AG].*[49]

Thus, while the statute prohibits inclusion or retention in the directory of a brand of cigarettes when the tobacco product manufacturer has failed to file the proper certification, the statute also provides an exception. The cigarettes may be included in the directory, and thus sold in Georgia, if the AG determines that the violation has been cured to his satisfaction. Therefore, contrary to the AG's argument, he does retain the discretion to include Roger cigarettes in the directory. Since the AG's decision was based in part on a misinterpretation of OCGA § 10-13A-4 (b), the superior court committed an error of law in affirming the AG's decision. Accordingly, we reverse and remand this case to the superior court, with instructions to remand it to the AG to exercise the discretion vested in him by OCGA § 10-13A-4 (b).[50]

---

[47] The AG found that because Carolina
was not the tobacco product manufacturer of the Roger brand for the years prior to February 2005, and because the actual tobacco product manufacturers of Roger never submitted proper certifications to the AG or otherwise performed their legal obligation to fund a qualified escrow account for Roger sales in this State, the Roger brand is not in compliance with the law and is ineligible for the Directory.

[48] See OCGA § 10-13A-4 (c).
Neither a tobacco product manufacturer nor brand family shall be included or retained in the directory if the [AG] concludes, in the case of a nonparticipating manufacturer, that: (1) Any escrow payment required pursuant to Chapter 13 of this title for any period for any brand family . . . has not been fully paid.
Here, the escrow payments have been paid. Contrary to the AG's conclusion, the statute does not demand that the tobacco product manufacturer make them.

[49] (Emphasis supplied.) OCGA § 10-13A-3 (a) requires tobacco product manufacturers to submit annual certifications, and subsection (c) lists the information that a nonparticipating manufacturer must include in its certification form.

[50] See generally *Dept. of Transp. v. Moseman Constr. Co.*, 260 Ga. 369, 370 (393 SE2d 258)

*Judgment affirmed in part and reversed in part, and case remanded. Smith, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 18, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008.

*Bondurant, Mixson & Elmore, James D. Summerville, Steven J. Rosenwasser,* for appellant.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Robin G. Cohen, Assistant Attorney General,* for appellee.

---

(1990) (where statutory scheme contemplates cure, substantial compliance held sufficient); *Davis v. Brown,* 274 Ga. App. 48, 51 (2) (616 SE2d 826) (2005) (where administrative rules give agency discretion to grant exception, superior court could have found that agency acted arbitrarily and capriciously in applying rule to deny hearing).