## A06A1915. JONES v. THE STATE.
### (642 SE2d 331)

MIKELL, Judge.

Darrell Lamont Jones appeals his conviction of aggravated battery, arguing that the evidence was insufficient to support the verdict, that a fatal variance existed between the indictment and the proof, and that impeachment evidence was improperly excluded. We affirm for the reasons set forth below.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence shows that the victim owned a beauty salon called Millennium Cuts, and Jones rented space from her. A business dispute arose between Jones and the victim, and she sought to terminate this arrangement. During business hours on July 11, 2003, Jones attacked her in the back room. According to the victim, Jones hit her in the head repeatedly with his fists, and he beat her down to the ground into a corner of the room. The victim testified that she begged him to stop and told him she had been "just playing" about "firing" him. Jones' response was, "You are lying, bitch. I am going to fuckin' kill you." Then Jones took the broom out of the victim's hand — she had been sweeping — and beat her with that too.

An unidentified woman entered the shop and jumped on Jones' back, allowing the victim to break free. The victim testified that Jones had torn off her sweater, leaving her with no clothing above the waist except for her bra. Thus exposed, the victim tried to run out of the shop, with Jones commanding, "Come here, bitch. Where you going?" Jones caught the victim at the front door and tried to drag her back into the shop, but she was able to grab the door handle of the sandwich shop next door, open it, and ask one of the owners to call 911.

An officer who responded to the scene testified that when he arrived, the victim was bleeding from her left eye, nose, and mouth. Her eye was swollen shut, her nose was twisted to the side, and her ring finger was bent. She was hysterical and shirtless. A second officer testified that her nose was swollen, crooked, and appeared to be broken. A detective who interviewed the victim six days after the

---

[1] (Citations omitted.) *Rivers v. State*, 255 Ga. App. 422, 423 (565 SE2d 596) (2002).

attack described her facial injuries as "very severe." A second detective "observed deep gouges on her neck where she had been choked."

The victim identified numerous photographs of her injuries taken by the detectives, showing her scarred and broken nose "laying to [the] side," her damaged eye, permanent scars on her neck, a broken finger, bruises on her thighs caused by Jones kicking her, and scars and bruises on her left arm. She further testified that she suffered a damaged retina in her left eye and that since the beating, that eye is smaller than her right eye. Finally, the victim testified that she had surgery on her nose eight weeks after the beating. During the interim, she had a drainage problem, and "blood was coming out" of her nose. Even at the time of trial, her nose was still "not all the way" and was "somewhat shifted to the left."

Derrick Harrison testified that Jones was cutting his hair on the day of the incident when the victim entered the shop. According to Harrison, the victim began speaking to Jones in an angry manner and interrupted him a few times while he was cutting Harrison's hair. Harrison could not hear exactly what the victim said and did not know the nature of the confrontation. Harrison left before the beating occurred.

Jones testified and asserted a justification defense. He admitted that he punched the victim twice in the face with the broom. First, he hit her in the eye area, then across the top of her head. According to Jones, after he hit her, she fell over a table, hit a chair, and then hit the ground. He claimed he hit her because she was coming toward him with the broom and cursing him.

1. The disposition of Jones' first two enumerations of error, that the evidence does not support the verdict and that a fatal variance exists between the indictment and the proof, both depend upon whether the evidence suffices to sustain his conviction of aggravated battery by the method alleged in the indictment. Aggravated battery may be committed by maliciously causing the victim bodily harm in one of three ways: by depriving the victim of a member of her body, by rendering a bodily member useless, or by seriously disfiguring the victim's body or a member thereof.[2] Jones was indicted for committing aggravated battery by the first method: depriving the victim of a member of her body. The bodily member specified in the indictment was her nose. Jones argues that his conviction cannot be sustained because a nose is not a bodily member, and even if it is, the evidence does not support a finding that the victim was deprived of its use. We disagree with both assertions.

---

[2] OCGA § 16-5-24 (a).

"Our present aggravated battery statute had its origin in the common law crime of mayhem."[3] "The 1968 Criminal Code, of which [OCGA § 16-5-24 (a)] is a part, created the crime of aggravated battery in lieu of the older crimes of mayhem."[4] Under the predecessor mayhem statute, biting off a portion of a victim's nose qualified as disfigurement.[5] "The accepted definition of bodily 'member' is 'bodily part or organ.' "[6] It follows, therefore, that a nose, which is a part of the body and was considered a bodily member under the law of mayhem, also qualifies as a bodily member for the purpose of the aggravated battery statute.

Proceeding to Jones' next contention, we find the evidence sufficient to support the jury's finding that Jones deprived the victim of her nose. " 'Depriving' the victim of a member of her body may refer to the loss of the use of the member."[7] Thus, in *Rivers v. State,*[8] where the defendant repeatedly hit the victim in the face, dislodging a large portion of one of her teeth and resulting in her inability to use the affected side of her mouth for several days, we held that the victim was deprived of her tooth and affirmed the defendant's aggravated battery conviction.[9] Similarly, in *Ganas v. State,*[10] the defendant "viciously beat, kicked, choked, and stomped on [his girlfriend], resulting in severe bruises and swelling on her face and back, a laceration on her nose bridge, and a broken little finger on her left hand."[11] We held that the loss of use of the finger, which had healed "for the most part" at the time of trial, could constitute depriving the victim of that member.[12] Likewise, in the case at bar, the victim's drainage problem and blood leakage from her nose prior to surgery, as well as her testimony that her nose was still not "all the way" at the time of trial, could constitute evidence of loss of use, thus depriving her of that bodily member. Finally, Jones' contention that medical testimony is required to demonstrate loss of use is incorrect.[13] Therefore, the victim's testimony sufficed to establish her injuries.

---

[3] *Wade v. State,* 261 Ga. 105, 113 (401 SE2d 701) (1991) (Benham, J., dissenting).

[4] *Mitchell v. State,* 238 Ga. 167, 168 (231 SE2d 773) (1977).

[5] *Mathis v. State,* 66 Ga. App. 111, 112 (17 SE2d 194) (1941). See also *Prior v. State,* 74 Ga. App. 226, 227 (1) (39 SE2d 559) (1946).

[6] (Citation omitted.) *Mitchell,* supra.

[7] (Citation and punctuation omitted.) *Rivers,* supra at 424.

[8] Id.

[9] Id.

[10] 245 Ga. App. 645 (537 SE2d 758) (2000).

[11] Id.

[12] Id. at 646 (1) (a), 647 (1) (c).

[13] See, e.g., *Williams v. State,* 262 Ga. App. 698, 699 (1) (588 SE2d 755) (2003) (in an aggravated battery case, expert testimony is not required to prove the loss of use of an eye).

2. Because, as outlined above, the proof corresponded to the indictment, no fatal variance occurred. In addition,

> [o]ur courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.[14]

The indictment satisfied this test. It charged Jones with committing an aggravated battery on a specific date, against a specific victim, and in a particular way. The method by which the crime was committed was proved at trial. Jones cannot claim that he was taken by surprise, and he may not be prosecuted again for this crime. This enumeration of error lacks merit.

3. Finally, Jones argues that the trial court erred in excluding evidence intended to impeach the victim. We disagree. The victim testified on direct that she provided a back room where the stylists and barbers could rest and relax "so they could be as comfortable as possible while at work." On cross-examination, she was asked whether she was "concerned" for them. Although confused by what defense counsel meant by the question, the victim ultimately answered "of course." During the defense case, Jones attempted to introduce the testimony of two witnesses to impeach the victim's testimony as to the manner in which she treated her employees. The trial court sustained the state's relevance objection but permitted Jones to make a proffer. The first witness stated that he personally never had any problems with the victim, although she had disagreements with her former partner, and the court found his testimony irrelevant. The second witness testified that he worked at the victim's shop for two months and left because of two incidents with the victim in which the police were summoned. The first time, the victim called the police to have the witness ejected from the shop because he owed her rent. During the second incident, which also involved rent, the witness called the police "to keep [himself] from blowing up." The trial court reserved

---

[14] (Citations omitted.) *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006).

ruling on the admissibility of this testimony, stating that in order to present the victim's prior acts of violence toward others Jones would first be required to present a justification defense. Defense counsel conceded that he had not met the requirements for introducing evidence of the victim's prior violent acts or general bad character.[15] After Jones testified, the trial court ruled that he had established a prima facie case of justification. However, the trial court excluded the testimony of the second witness on the ground that it did not show prior acts of violence.

On appeal, Jones does not attack the exclusion of the testimony on the ground that it did not show prior acts of violence. Rather, he contends that the trial court abused its discretion in refusing to admit the proffered testimony as impeachment of the victim's testimony concerning her relationship with her employees. It is true that, pursuant to OCGA § 24-9-82, a witness may be impeached by disproving the facts to which she testified. But the proffered testimony did not disprove facts to which the victim testified.[16] Rather, it was evidence of prior specific acts or bad character. As counsel conceded he had not met the requirements for introducing either category of evidence, the trial court did not abuse its discretion in excluding the evidence.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 20, 2007.

*Lawrence J. Zimmerman*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Assistant District Attorney*, for appellee.

---

[15] See, e.g., *Laster v. State*, 268 Ga. 172, 174 (2) (486 SE2d 153) (1997) (prior violent acts); *Ailstock v. State*, 159 Ga. App. 482, 483 (1) (283 SE2d 698) (1981) (character impeachment).
[16] See generally *Shelnutt v. State*, 255 Ga. App. 157, 159 (2) (564 SE2d 774) (2002).
[1] See *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).