**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 15, 2012**

# In the Court of Appeals of Georgia

A12A0967. KEGLER v. THE STATE.

BARNES, Presiding Judge.

After the police executed a search warrant at a residence and found drugs and drug paraphernalia there, Clarence Edward Kegler was charged with and convicted of trafficking in cocaine and possession of marijuana with intent to distribute. The trial court denied his motion for new trial, leading to this appeal. Kegler challenges the sufficiency of the evidence and contends that the trial court erred by allowing the State's lead investigator to remain in the courtroom after the rule of sequestration had been invoked, by failing to give the pattern charge on leniency, and by failing to charge the jury on the need for corroboration of an accomplice's testimony. For the reasons discussed below, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict. See *Jones v. State*, 283 Ga. App. 631 (642 SE2d 331) (2007). So viewed, the evidence showed that on April 21, 2006, sheriff's deputies executed a search warrant at a residence in Early County. In addition to the search of the residence, the warrant authorized the deputies to search Kegler and two of his cousins.

Upon entry, the deputies found two bags of suspected marijuana and a bag of suspected cocaine on the kitchen counter near the microwave. They also found a set of digital scales and several different sizes of plastic bags in the kitchen near the drugs. The two bags of suspected marijuana tested positive and weighed 10.7 ounces, and the bag of suspected cocaine tested positive and weighed 42.47 grams, with a purity of 32.5 percent. The digital scales contained residue that tested positive for the presence of cocaine.

The residence was owned by Emmanuel Kegler,[1] one of Kegler's cousins, but Kegler was there when the search occurred. When deputies entered the residence, Kegler ran out of the back door but was apprehended by a sheriff's deputy. The

---

[1] Emmanuel shared defendant Kegler's last name and thus will be referred to hereinafter by his first name for ease of reference.

deputy searched Kegler and noted that he had a large sum of cash on his person, but the deputy did not seize the cash and count it because he wanted to continue assisting in the search of the residence.

Emmanuel was arrested inside the residence and had $435 on his person. Two other individuals, Shawn Often and Travis Often, also were inside the residence and were arrested. Another individual, Dontavious Ogden, was in the front yard when the deputies arrived, and he threw down a sack of marijuana that had been in his pocket and began to run. A deputy apprehended Ogden and placed him under arrest.

Following his arrest, Ogden was placed in a patrol car with Kegler. While the two were in the patrol car, Kegler passed to Ogden the large sum of cash that had been on his person when he was originally apprehended outside the residence. After the two were transported to jail, the sheriff searched Ogden and found the cash on him. The seized cash totaled $1,847. Ogden had only approximately $175 in his pockets before Kegler passed him the cash in the patrol car.

Emmanuel and Kegler were jointly indicted on charges of trafficking in cocaine and possession of marijuana with intent to distribute. Emmanuel also was charged with possession of tools for the commission of a crime. At the ensuing jury trial, the State called multiple witnesses, including the other individuals arrested at the

3

residence (Shawn Often, Travis Often, and Dontavious Ogden), the lead police investigator, the sheriff and several of his deputies who aided in the search, the deputy who tested and weighed the marijuana, and the forensic chemist who tested and weighed the cocaine. Furthermore, during the trial, Emmanuel entered a "blind" or nonnegotiated guilty plea to all charges, after which he was called to testify by the prosecution.[2]

Emmanuel testified that on the day the search occurred, Kegler had brought over the two large bags of marijuana and the digital scales, which later tested positive for cocaine residue, to his residence and placed them in the kitchen. According to Emmanuel, he and Kegler picked stems out of the marijuana in the kitchen, and he admitted that the scales were for weighing the marijuana and that they were preparing to sell it.

Emmanuel further testified that one of his other cousins had brought the bag of cocaine to the residence that day and had placed it in the microwave in the kitchen. Emmanuel confirmed that Kegler was at the residence when the other cousin arrived

---

[2] A guilty plea is nonnegotiated when there is no agreement between the State and the defendant with regard to the sentence. See *Davis v. State*, __ Ga. App. __ (1), n. 4 (Case No. A12A0674, decided on June 27, 2012).

with the bag of cocaine and was present when Emmanuel and the cousin talked about the cocaine.

During the testimony of Shawn Often, the prosecution impeached him with a written statement that he made after his arrest. In the statement, Often stated that when the deputies later entered the residence, Kegler pulled the bag of cocaine out of the microwave before he ran out the back door. Deputies subsequently found the cocaine under the two bags of marijuana on the kitchen counter next to the microwave.

The lead investigator was qualified to testify as an expert on narcotics investigations and the sell or distribution of cocaine and marijuana. He testified that the ten ounces of marijuana seized from the residence would have cost between $600 and $800, and based on his training and experience, was consistent with an amount used for distribution. He further testified that the approximately 42 grams of seized cocaine would have cost around $1,350, and based on his training and experience, was consistent with an amount used for distribution.

1. Kegler contends that the evidence was insufficient to support his convictions for trafficking in cocaine and possession of marijuana with intent to distribute. In reviewing the sufficiency of the evidence under the standard enunciated in *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979), our role is limited to determining whether the evidence, construed in the light most favorable to the verdict, enabled a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *Bryant v. State*, 309 Ga. App. 649 (1) (710 SE2d 854) (2011). "In answering that question, we do not re-weigh the evidence or resolve conflicts in testimony, but rather defer to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Walker v. State*, 314 Ga. App. 714, 716 (1) (725 SE2d 771) (2012).

(a) With respect to his conviction for trafficking in cocaine, Kegler's sole argument is that the State failed to show that he possessed the bag of cocaine found in the kitchen of the residence owned by Emmanuel. According to Kegler, the evidence showed that another one of his cousins brought the cocaine to Emmanuel's residence, and he emphasizes that he did not have any cocaine on him at the time of his arrest. Kegler also maintains that he never discussed the cocaine, never touched it, and never "had anything to do with [it]."

OCGA § 16-13-31 (a) (1) provides that "[a]ny person . . . who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10

6

percent or more of cocaine . . . commits the felony offense of trafficking in cocaine[.]"

> Possession of contraband may be joint or exclusive, and actual or constructive. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.

(Citation omitted.) *White v. State*, 313 Ga. App. 605, 606 (1) (722 SE2d 198) (2012).

Furthermore, any person "concerned in the commission of a crime" is a party to the crime and can be convicted of it. OCGA § 16-2-20 (a). *"One is concerned in the commission of a crime where the person either directly commits, intentionally causes another to commit, intentionally aids or abets the commission of, or intentionally advises or otherwise encourages another to commit the crime."* (Footnote omitted.) *Stevens v. State*, 245 Ga. App. 237, 241 (7) (537 SE2d 688) (2000). See OCGA § 16-2-20 (b).

Applying these principles to the case-at-hand, we conclude that the trial evidence, when viewed in the light most favorable to the verdict, was sufficient to enable a rational trier of fact to find Kegler guilty beyond a reasonable doubt of

trafficking in cocaine. *Jackson*, 443 U. S. at 319 (III) (B). The State presented evidence that even if Kegler did not bring the bag of cocaine over to Emmanuel's residence, he nevertheless possessed it and was a party to the crime of trafficking in cocaine. Specifically, there was testimony showing that the digital scales containing cocaine residue belonged to Kegler; that Kegler was present when Emmanuel and his other cousin discussed the cocaine; that Kegler got the bag of cocaine out of the microwave before he fled out of the back door of the residence in an effort to evade the police; and that Kegler had a large amount of cash on his person that he attempted to discard by passing it to Ogden in the police car.

Taken together, this testimony clearly was sufficient to show that Kegler possessed the cocaine and was concerned in the commission of the crime. See *Muckle v. State*, 307 Ga. App. 634, 637 (1) (a) (705 SE2d 721) (2011) (attempting to discard evidence can serve as circumstantial evidence of guilt); *Sims v. State*, 306 Ga. App. 68, 70 (1) (701 SE2d 534) (2010) ("A person's involvement in the commission of a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime.") (citation and punctuation omitted); *Collins v. State*, 283 Ga. App. 188, 191 (1) (a) (641 SE2d 208) (2007) (flight can serve as

8

circumstantial evidence of guilt). Kegler's challenge to his conviction for trafficking in cocaine, therefore, is without merit.

(b) With respect to his conviction for possession of marijuana with intent to distribute, Kegler's sole argument is that the evidence was insufficient because the testimony of his accomplice, Emmanuel, was not corroborated.

> Although [Kegler] is correct that the uncorroborated testimony of an accomplice is not sufficient in and of itself to support a felony conviction, [see OCGA § 24-4-8,] it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.

(Citation omitted.) *Williamson v. State*, 308 Ga. App. 473, 477 (1) (708 SE2d 57) (2011).

Emmanuel testified that Kegler brought two bags of marijuana to his residence along with digital scales, and that Kegler assisted in picking the stems out of the

9

marijuana. Consistent with Emmanuel's testimony, deputies later found two bags of marijuana and digital scales near the microwave on the kitchen counter of the residence, as well as stems that appeared to have been picked from the marijuana. Moreover, Shawn Often saw Kegler beside the microwave in the kitchen where the marijuana, scales, and marijuana stems were located in plain view, and he also saw Kegler flee out of the back door of the kitchen when deputies arrived at the residence. A deputy further testified that he discovered Kegler trying to flee from the residence and was able to apprehend him.

The testimony of Shawn Often and the deputies who participated in the execution of the search warrant served to corroborate Emmanuel's testimony. See *Williamson*, 308 Ga. App. at 478 (1) (physical evidence found at scene corroborated accomplice's testimony); *Ellison v. State*, 265 Ga. App. 446, 447-448 (1) (594 SE2d 675) (2004) (flight from residence containing marijuana in many rooms showed consciousness of guilt of possession of marijuana and sufficiently corroborated accomplice's testimony); *Solomon v. State*, 161 Ga. App. 566 (288 SE2d 342) (1982) (concluding that defendant's "timely presence at the scene of the crime and the circumstances of his discovery there [provided] sufficient corroboration of the accomplice's testimony"). Hence, we conclude that the combined evidence was

10

sufficient to enable a rational trier of fact to find Kegler guilty beyond a reasonable doubt of possession of marijuana with intent to distribute. *Jackson*, 443 U. S. at 319 (III) (B).

2. Kegler maintains that the trial court erred by allowing the State's lead investigator to remain in the courtroom after the rule of sequestration had been invoked and to testify after the other prosecution witnesses. "However, it is well within the trial court's discretion to permit the State's lead investigator to remain in the courtroom despite invocation of the rule of sequestration where the State shows his presence is necessary for the orderly presentation of evidence." (Citation and punctuation omitted.) *Mitchell v. State*, 290 Ga. 490, 491 (3) (722 SE2d 705) (2012). This is true, even if the investigator is not the first witness called to the stand. See *White v. State*, 253 Ga. 106, 110 (5) (317 SE2d 196) (1984); *Andrews v. State*, 307 Ga. App. 557, 560 (2) (b) (705 SE2d 319) (2011).

Here, the prosecution requested that the lead investigator be permitted to remain in the courtroom due to the high volume of exhibits in the case and the need "for an orderly presentation of the evidence." The reasons stated by the prosecution for the need of the lead investigator's presence in the courtroom were sufficient for the trial court to exempt the investigator from the rule of sequestration. See *Mitchell*,

11

290 Ga. at 491 (3) (trial court did not abuse discretion in permitting State's lead investigator to remain in courtroom, where investigator was needed for orderly presentation of multiple exhibits and witnesses); *Dockery v. State*, 287 Ga. 275, 276 (3) (695 SE2d 599) (2010) (given the volume of exhibits and testimony, and significance of the investigator's role in the case, trial court did not abuse its discretion in allowing investigator to remain in courtroom)*; Thorpe v. State*, 285 Ga. 604, 606 (2) (678 SE2d 913) (2009) (trial court acted within its discretion in allowing lead detective to remain in courtroom, given the large number of exhibits and witnesses).

3. Kegler further argues that the trial court erred by failing to give the full pattern jury charge on leniency.[3] The pattern charge provides:

> In assessing the credibility of a witness, you may consider any possible motive in testifying, if shown. In that regard you are authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency, or similar matters. You alone shall decide the believability of the witnesses.

---

[3] In a separate enumeration of error, Kegler contends that the trial court erred in failing to charge the jury that a witness could be impeached with a prior felony conviction. But the record reflects that the trial court did in fact charge the jury on this mode of impeachment. Consequently, Kegler's contention is without merit.

12

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.31.80. The trial court instead charged the jury:

> In assessing the credibility of a witness, you may consider any possible motive for testifying, if shown. In that regard, you are authorized to consider any possible leniency or similar matters. You alone shall decide the believability of the witnesses.

According to Kegler, the trial court's charge was incomplete and erroneous because it omitted the language from the pattern charge referring to "any possible pending prosecutions, negotiated pleas, [or] grants of immunity." Kegler maintains that the trial court should not have omitted this language because, he contends, there was testimony reflecting that three of the testifying witnesses – Shawn Often, Travis Often, and Dontavious Ogden – were shown leniency by the State with respect to charges that had been brought against them relating to this case.

Kegler, however, did not object to the charge as given, even though he was required to do so under the law in effect at the time of his trial. See OCGA § 17-8-58 (a) ("Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for

13

such objection before the jury retires to deliberate.")[4] Consequently, we review Kegler's enumeration of error only to determine whether the trial court's leniency charge constituted plain error. See OCGA § 17-8-58 (b) ("Failure to object . . . shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. . . ."); *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011). Reversal for plain error is required only if the following four conditions are met: "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *White v. State*, __ Ga. __ (2) (Case No. S12A0440, decided on April 24, 2012). See *Kelly*, 290 Ga. at 33 (2) (a). And "[j]ury instructions must be read and considered as a whole when determining whether the charges contained error." *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011).

Here, the trial court did in fact charge on the basic principle that the jury could consider any leniency shown to a witness in assessing his or her credibility. The trial court further charged the jury that it was to determine the credibility and believability

---

[4] OCGA § 17-8-58 (a) applies to all trials occurring on or after July 1, 2007. See Ga. Laws 2007, p. 595, § 5. Kegler's trial occurred in September 2007.

14

of witnesses; that in passing upon credibility, it was authorized to consider a witness's interest in the case; and that it could assess the witness's personal credibility. Considered as a whole, the trial court's charge sufficiently apprised the jury of the negative inferences it might draw from any forms of leniency granted to witnesses by the State in return for their testimony. Accordingly, the trial court's omission from its leniency charge of the language referring to "any possible pending prosecutions, negotiated pleas, [or] grants of immunity" was not obviously erroneous and did not affect the outcome of the trial proceedings, and, as a result, there was no plain error. See *Allen v. State*, 290 Ga. 743, 746 (3) (723 SE2d 684) (2012) (omitted jury charge did not affect outcome of proceedings and thus did not constitute plain error, in light of charges when read as a whole); *Guillen v. State*, 275 Ga. App. 316, 318 (1) (620 SE2d 518) (2005) (trial court's refusal to give defendant's proposed charge on immunity and leniency granted to a witness was not error because "the principle of the proposed charge was covered in the general charge").

4. Kegler also contends that the trial court erred by failing to charge the jury on the need for corroboration of an accomplice's testimony. But, "[a]s a rule, it is not error to fail to give a charge on corroboration of accomplices where the State relies upon other evidence apart from the accomplice's testimony." (Punctuation and

15

footnote omitted.) *Laing v. State*, 304 Ga. App. 15, 18 (2) (695 SE2d 363) (2010). See *Cochran v. State*, 300 Ga. App. 92, 97 (3) (684 SE2d 136) (2009). As discussed supra in Division 1 (b), the State did not rely solely upon Emmanuel's testimony to show Kegler's guilt, and the trial court thus committed no error in failing to give the charge on corroboration of accomplice testimony. See id.

*Judgment affirmed. Adams and McFadden, JJ., concur.*