**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 25, 2013**

# In the Court of Appeals of Georgia

A12A2006. WILLIAMS v. THE STATE.

McMILLIAN, Judge.

A jury convicted Christopher Williams of two counts of child molestation, one count of sexual battery and one count of aggravated child molestation. Williams appeals the trial court's denial of the claims of ineffective assistance of trial counsel he raised in his motion for new trial. We affirm.

The evidence at trial showed that the eight-year-old daughter of Williams' girlfriend reported to her teacher that Williams had "put his stuff inside" her, leading the teacher to report the matter to the school guidance counselor, who subsequently notified the Department of Family and Children Services ("DFCS") and the police. The girl made similar statements to the DFCS caseworker, the police officer who responded to the report, and the detective who investigated the case. Although

Williams' girlfriend initially did not believe her daughter's reports about Williams, she later changed her mind and testified at trial that her daughter told her that Williams had stuck his penis in her on two occasions.

Williams denied the charges, asserting that he had merely checked the child's underwear for hygiene purposes. He agreed to take a stipulated polygraph examination, which was audio- and video-recorded. The examiner, who testified at trial, concluded that the examination indicated deception and thus determined that Williams did not pass the polygraph.

The doctor who examined the girl testified that she detected no tears or other injuries to the child's genital area; she also observed that the child had poor hygiene. No male DNA was recovered during the examination. But the doctor observed certain physiological reactions in the child that she testified were consistent with the child's accusations against Williams and further testified that the lack of trauma to the affected area was not inconsistent with the allegations.

Williams' motion for new trial asserted the evidence was insufficient to support his convictions and further asserted that the trial court erred in denying his claims that his trial counsel was ineffective in (1) failing to object to the police officer's hearsay testimony regarding alleged conversations between his girlfriend and her daughter;

2

(2) failing to object to improper opinion testimony from the polygraph examiner; (3) failing to object to the publication of the entire audio and video recordings of the polygraph exam; and (4) failing to provide the state with discovery materials in a timely fashion, resulting in the exclusion of his medical records as evidence at trial. Williams' post-trial counsel waived a hearing on his motion for new trial, noting "there is no evidence for us to present." His counsel elected instead to stand on the brief she filed in support of the motion. The trial court subsequently denied the motion. Williams appeals only the denial of his claims of ineffectiveness of counsel.

In considering Williams's appeal, we apply the two-prong test for determining the validity of a claim of ineffectiveness of counsel established in *Strickland v. Washington,* 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), which

> asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails.

(Citation and punctuation omitted.) *Philpot v. State,* 311 Ga. App. 486, 488–489 (3) (716 SE2d 551) (2011). On appeal of a claim of ineffective assistance, "we accept the

3

trial court's factual findings and credibility determinations unless they are clearly erroneous, while we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id.

1. Williams first asserts that his trial counsel was ineffective in failing to object to the police officer's hearsay testimony regarding the victim's description of conversations she had with her mother, Williams's girlfriend.

According to the police officer, the victim said that Williams "put his stuff" in her the morning she reported him to her teacher. When her mother returned home that morning after taking the victim's grandmother to work, she asked the victim what was wrong, and the victim told her what had happened. At that point, Williams's attorney posed a hearsay objection but did not obtain a ruling from the trial court. Instead, the prosecutor instructed the witness to "just describe . . . how [the victim] seemed about talking to her mom or whether she described her mom as supportive or angry or anything else." Despite this instruction, the officer testified about the mother's statements as related by the victim. The mother told the child that in the future she would have to go with the mother to take the grandmother to work. She also told the child that she would talk to Williams, but she did not want to get him in trouble and get him "locked up."

Even if Williams's attorney was ineffective in failing to pose a further hearsay objection or to obtain a ruling on the earlier objection, the officer's testimony was merely cumulative of other, admissible evidence. The victim testified that she had told her mother about Williams's actions that morning but her mother did not really do anything. The police officer confirmed that the mother was defensive on the day the victim made the report and made excuses for why Williams might have touched the child. Although the mother denied that the victim had reported Williams's actions to her that morning, she admitted that she told the victim that she would not leave her alone with Williams again. The mother also said that she did not believe her daughter's accusations at first and that she covered for Williams, although she later came to believe her daughter's story.

Thus, even if the officer's testimony was inadmissible hearsay, "[t]he erroneous admission of hearsay is harmless where, as here, legally admissible evidence of the same fact is introduced. In such a case, the hearsay is cumulative and without material effect on the verdict." (Punctuation and footnote omitted.) *Skinner v. State*, 318 Ga. App. 217 (1) (733 SE2d 506) (2012). See also *Moody v. State*, 277 Ga. 676, 680 (4) (594 SE2d 350) (2004) (admission of hearsay evidence harmless where it "was cumulative of admissible evidence and did not touch upon the central issue of the

5

case.") (citation omitted). And "the failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel." (Citation, punctuation and footnote omitted.) *Ashmid v. State*, 316 Ga. App. 550, 558 (3) (b) (730 SE2d 37) (2012).

2. Williams next argues that his trial counsel was ineffective in failing to object to opinion testimony by the polygraph examiner regarding his hygiene, which he asserts improperly invaded the province of the jury to determine credibility.

The trial court qualified Alphonso Hagan, the polygraph examiner, as an expert witness for the State "to render opinions with respect to polygraph examinations and administrat[ion]." Hagan testified that prior to administering the polygraph examination, he spoke with Williams about the victim and explored ways in which he may have touched the child accidentally. Williams told him that the child had a habit of not cleaning herself properly after going to the bathroom, so he would sometimes look in her underpants to see if she had cleaned herself properly. Hagan then testified:

> The thing that concerned me about this was Mr. Williams came in that morning, his hygiene was way below standard. I mean I could barely stay in the room with him. So my thing was if someone was concerned of a child's hygiene, . . . I'm sure he would have taken care of his own

6

hygiene a lot better than, you know, claimin[g] he was so concerned about hers. And that's one of the things that really stood out with me in dealin[g] with Mr. Williams that day.

"Although an expert witness may not testify as to his opinion of the other witnesses' truthfulness, the expert witness may express an opinion as to whether medical or other objective evidence in the case is consistent with the other witnesses' story." (Citation and punctuation omitted.) *Cade v. State*, 289 Ga. 805, 809 (5) (716 SE2d 196) (2011). Here, Hagan did not opine as to whether Williams was telling the truth about his interaction with the victim. He merely stated that Williams's claimed concern regarding the victim's hygiene appeared to be inconsistent with the state of his own hygiene.

But even if this testimony could be considered improper, Williams has failed to demonstrate that he was prejudiced by it, especially in light of Hagan's later expert opinion testimony that the polygraph indicated that Williams was "deceptive" in response to his questions regarding the victim's allegations. Thus, Williams failed to show a reasonable probability that the outcome of his trial would have been different but for his counsel's failure to object to Hagan's testimony about Williams's hygiene.

7

3. Williams also asserts that his trial counsel was deficient in failing to object when the State did not limit Hagan's testimony to the results of the polygraph examination, citing *Brown v. State*, 175 Ga. App. 246, 248-249 (4) (333 SE2d 124) (1985). In *Brown*, this Court held that the results of a polygraph are probative and admissible upon stipulation of the parties, but, where defendant objected, the Court held that other evidence regarding the polygraph, specifically evidence of the defendant's refusal to take a polygraph, was not admissible, even where defendant previously stipulated to its admission. Id.

Here, Williams's counsel raised no objection to the State's publication of the entire audio and video recording Hagan made of the polygraph session, including his discussions with Williams both before and after the polygraph test. The discussion before the test included a review of Williams's constitutional rights in connection with the polygraph, an explanation of how the polygraph worked, an exploration as to whether Williams may have touched the victim, Williams's description of how he checked the victim's underpants, and his consistent denials that he had touched the victim inappropriately. Following this discussion, Hagan administered the polygraph examination to Williams twice. After Hagan administered the tests, he informed Williams that the results showed that he was deceptive. Hagan then repeatedly

8

accused Williams of lying, stating that the victim was telling the truth and that Hagan knew that Williams had touched her. Williams countered each of Hagan's accusations with consistent denials that he had touched the girl inappropriately.

Even if this evidence generally would not be admissible, a presumption exists that Williams's counsel made a strategic decision not to object:

> With regard to the deficiency prong [of the *Strickland* test], there is a strong presumption that trial counsel's performance is not deficient but falls within the wide range of reasonable trial strategy, in which unwise tactics do not amount to ineffective assistance of counsel.

(Citation omitted.) *Allen v. State*, 281 Ga. App. 294, 296 (3) (635 SE2d 884) (2006). "[D]ecisions of when and how to raise objections are generally matters of trial strategy. . . . " (Footnote omitted.) *Holmes v. State*, 271 Ga. App. 122, 124 (3) (608 SE2d 726) (2004). And "[d]ecisions about . . . whether to object . . . provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen that tactic." (Citation omitted.) *Allen v. State*, 281 Ga. App. at 296 (3).

Williams bore the burden of overcoming the strong presumption that his trial counsel's decision not to object to the admission of the entire tape was reasonable trial strategy and of proving instead that it constituted deficient performance. See

9

*Peterson v. State*, 282 Ga. 286, 292 (4) (d) (647 SE2d 592) (2007). And "[b]ecause his trial attorney did not testify on the motion for new trial, [Williams] made no affirmative showing that the purported evidentiary deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy." (Citation and punctuation omitted.) *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002). The presumption of reasonable trial strategy is "extremely difficult to overcome when the defendant fails to call the trial attorney to testify on the motion for new trial." (Punctuation and footnote omitted.) *Boykin v. State*, 264 Ga. App. 836, 841 (5) (592 SE2d 426) (2003).

Moreover,

[e]ffectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [appellant] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Williams's] original representation was inadequate.

(Citation and footnote omitted.) *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002). Although we have no testimony, the record reflects that Williams' trial counsel cross-examined Hagan about the extent and purpose of his questions

10

before and after the test. He also relied on Hagan's behavior on the videotape in closing argument to suggest that Hagan engaged in "a back and forth argument" with Williams before the test to get him upset and thus affect his performance. He also cited to Hagan's continuing argument with Williams after the test to underscore that Williams was consistent in saying that he was telling the truth. Although other attorneys may not have used this evidence in quite the same way, Williams failed to carry his burden of overcoming the presumption that the failure to object was reasonable trial strategy by his trial counsel. Accordingly, the trial court did not err in denying his claim of ineffective assistance of counsel on this ground.

4. Williams further contends that his trial counsel was deficient in failing to produce his medical records to the State "no later than five days prior to trial" as required under OCGA § 17-16-4 (b) (1), resulting in the exclusion of the records at trial.

Although the trial court excluded the actual medical records from evidence, the court noted that this ruling did not necessarily exclude testimony regarding the contents of the records from those with personal knowledge. And, in fact, both Williams and his mother testified to his prior use of medication for his "nerve problems." But in any event, because Williams failed to proffer the excluded medical

11

records, we cannot review his claim that the exclusion of this evidence was prejudicial to his defense and that his trial counsel was ineffective in failing to comply with OCGA § 17-16-4 (b) (1). See *White v. State*, 312 Ga. App. 421, 429-430 (3) (c) (718 SE2d 335) (2011).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*