**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 18, 2014**

# In the Court of Appeals of Georgia

A13A2500. MILLER v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Ivan Dale Miller of rape, and the trial court denied his motion for new trial. On appeal, Miller challenges the sufficiency of the evidence. He further contends that the trial court erred in admitting similar transaction evidence and in limiting his direct examination of a witness. Lastly, Miller contends that his trial counsel rendered ineffective assistance in several respects. For the reasons that follow, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. See *Wynn v. State*, 322 Ga. App. 66 (744 SE2d 64) (2013). So viewed, the evidence showed that around midday on March 25, 2009, the female victim was stranded by the side of a highway after her car broke down. She

was alone and did not have a working cell phone. Miller pulled over to the side of the highway in his pickup truck and offered the victim a ride. After Miller assured the victim that he had a wife and children and only wanted to help her, she got in his truck. Once Miller began driving, his demeanor changed and he became aggressive, grabbing the victim by the hair and forcing her head down in the seat. Miller drove to a secluded wooded area where he repeatedly struck the victim and "kept pounding [her] in [her] ribs," verbally abused her, and forced her to have vaginal intercourse with him. He then warned the victim to "keep [her] mouth shut" and fled from the scene in his truck.

The victim made her way back to the road and continued walking until she saw a house. The homeowner's daughter was sitting on the porch and saw the victim coming down the driveway. According to the daughter, the victim was holding her side, she "looked real disheveled," and she was shaking and crying. The victim approached the house, told the daughter what had happened to her, and asked the daughter to call an ambulance. The daughter observed that the victim "was just to the point of [being] almost hysterical," had "red marks like scrapes" on her body, and was "real red in the face." The daughter called 911, and sheriff's deputies and an ambulance arrived shortly thereafter.

2

The victim was taken to the hospital, where a medical exam was conducted and a sexual assault kit was administered. The victim complained of rib pain and was crying and distraught over the sexual assault. A police investigator arrived at the hospital and spoke with the victim, who explained what had happened and provided a detailed physical description of her assailant. The victim later identified Miller as her assailant in a photographic lineup. Following the identification, Miller was arrested and charged with rape. Subsequent testing showed that DNA found on the vaginal-cervical swabs taken from the victim as part of the sexual assault kit matched Miller's DNA profile.

At trial, the victim testified to the events as summarized above and positively identified Miller as her assailant. The State also called as witnesses the homeowner's daughter who first saw the victim after the attack, the sheriff's deputies and an emergency medical technician ("EMT") who responded to the scene, the investigators assigned to the case, and the nurse who administered the sexual assault kit. Additionally, the defense stipulated that DNA found on the vaginal-cervical swabs taken from the victim matched Miller's DNA profile.

The State also presented evidence of two similar transactions committed by Miller a few years before the current incident occurred. The victim of the first similar

3

transaction testified that a man offered her a ride from a gas station after her car had a flat tire. When she got into his pickup truck, his demeanor changed, and he took her to a secluded location and forced her to remove her clothes. The secluded location where she was taken was near where the rape in the instant case took place. She later told police investigators that she had been beaten and raped during the incident and positively identified Miller as her assailant in a photographic lineup.

The victim of the second similar transaction testified that a man had offered her a ride home from a restaurant one evening but then drove her to a secluded location where he assaulted and raped her. She sustained bite marks on her knee and breast as well as scratches and bruises as a result of the assault. The victim positively identified Miller as the assailant in a photographic lineup and at trial.

Miller chose not to testify. He relied upon a stipulation by the State that the victim in the present case tested positive for cocaine and opiates on the day of the alleged rape. He also called two witnesses and elicited testimony from them aimed at casting doubt on the severity of the injuries sustained by the victim of the second similar transaction.

After hearing all of the evidence, the jury found Miller guilty of rape. Miller moved for a new trial, alleging, among other things, that his trial counsel was

ineffective. Following a hearing, the trial court denied Miller's motion, resulting in this appeal.

1. Miller first contends that there was insufficient evidence presented at trial to convict him of rape. "A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." (Punctuation and footnote omitted.) *Wynn*, 322 Ga. App. at 67 (1). See OCGA § 16-6-1 (a) (1). In determining whether the evidence was sufficient to support Miller's rape conviction,

> we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

We conclude that a rational jury was authorized to find Miller guilty beyond a reasonable doubt of rape. The victim testified that Miller forced her to have vaginal intercourse with him against her will, and her testimony, standing alone, was sufficient to sustain the conviction. See former OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").[1] See also *Wynn*, 322 Ga. App. at 68 (1); *Harris v. State*, 283 Ga. App. 374, 376-377 (1) (a) (641 SE2d 619) (2007). While Miller argues that there were inconsistencies in the victim's testimony, "[it] is for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citations and punctuation omitted.) *Farris v. State*, 290 Ga. 323, 324 (1) (720 SE2d 604) (2012). Because there was sufficient evidence to support the verdict, the trial court did not err in denying Miller's motion for new trial on this basis.

2. Miller next contends that the trial court erred in admitting the similar transaction evidence of the two prior rapes he allegedly committed. It is well-established that before presenting similar transaction evidence,

---

[1] Because the present case was tried in April 2010, the new Georgia Evidence Code does not apply to any of the evidentiary issues addressed in this case. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

the State must show that it is seeking to introduce the evidence for a permissible purpose; there is sufficient evidence that the accused committed the independent offense or act; and there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. Implicit also are the concepts that the evidence must be relevant to an issue in the case and that its probative value outweighs its prejudicial effect.

(Citations and punctuation omitted.) *Newton v. State*, 313 Ga. App. 889, 890-891 (1) (723 SE2d 95) (2012). A trial court's decision to admit similar transaction evidence is reviewed only for an abuse of discretion. *Moore v. State*, 288 Ga. 187, 190 (3) (702 SE2d 176) (2010).

The trial court conducted a similar transaction hearing and held that the two prior rapes were admissible to prove Miller's bent of mind, course of conduct, and lustful disposition, and to corroborate the victim's testimony of no consent. The trial court gave a limiting instruction before the similar transaction testimony was introduced and in its final charge to the jury. On appeal, Miller does not contest that the similar transaction evidence was admitted for a permissible purpose or that there was a sufficient similarity between that evidence and the charged offense. Rather, Miller limits his challenge to two arguments: (a) that the State failed to prove that the

7

two prior rapes actually occurred or that he was the perpetrator of them and (b) that the evidence of the rapes was unduly prejudicial.

(a) "Absolute proof is not required that a defendant committed the offense in a similar transaction." (Citations and punctuation omitted.) *Dean v. State*, 321 Ga. App. 731, 733 (1) (a) (742 SE2d 758) (2013). See *Martin v. State*, 198 Ga. App. 488, 488-489 (402 SE2d 95) (1991). Rather, the State need only prove that the defendant committed the prior offense by a preponderance of the evidence. *Dean*, 321 Ga. App. at 733 (1) (a). Preponderance of the evidence is defined as "that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." See former OCGA § 24-1-1 (5). Under the preponderance of the evidence standard, the trial court did not err in finding that there was sufficient evidence that the two prior rapes occurred and were committed by Miller to authorize their admission at trial.

(i) With respect to the first similar transaction, the victim of that incident testified that a man offered her a ride from a gas station after her car had a flat tire, that she got into his pickup truck, that his demeanor then changed, and that he took her to a secluded location where he forced her to remove her clothing. The victim

8

testified that she had been assaulted, but not sexually assaulted, and she denied telling police investigators that she had been raped. According to the victim, she had "bad nerves," suffered from "short-term memory loss," and was unsure of when exactly the incident had occurred. The victim further testified that she was "scared" Miller might not be the man who had attacked her because he was "a lot younger" when the assault occurred and did not look "the same anymore."

Nevertheless, during her testimony, the victim was able to authenticate a photographic lineup that she had previously been shown by police investigators in which she had identified Miller as her assailant. Moreover, police investigators testified that during their initial interview of the victim, she told them that she had been raped during the incident, which had occurred "5 ½ to 6 years ago," and had given a description of her assailant. The investigators further testified that the victim had positively identified Miller as her assailant in the photographic lineup shown to her and had exhibited no signs of hesitation or doubt. One of the investigators also testified that Miller had changed his appearance after his arrest, and the State introduced Miller's booking photograph to show the difference.

The credibility of a similar transaction victim is a question for the trier of fact, and any inconsistencies in the victim's testimony go to the weight of the evidence,

9

not its admissibility. See *Wright v. State*, 313 Ga. App. 829, 832 (1) (a) (723 SE2d 59) (2012); *Williams v. State*, 264 Ga. App. 115, 118 (2) (589 SE2d 676) (2003); *Morris v. State*, 263 Ga. App. 115, 118 (3) (587 SE2d 272) (2003). Furthermore, a similar transaction victim's prior inconsistent statement to the police is admissible as substantive evidence and can provide the basis for the admission of the prior offense even if the victim subsequently denies that the offense occurred. See *Bester v. State*, __ Ga. __ (2) (c) (Case No. S13A1192, decided Nov. 18, 2013). Based on the combined testimony of the victim and the police investigators, the trial court committed no error in finding that the State sufficiently established that the victim of the first similar transaction had been raped by Miller.

(ii) With respect to the second similar transaction, the victim of that incident testified that a man had offered her a ride home from a restaurant but then drove her to a secluded location where he assaulted and raped her, and she positively identified Miller as the man in a photographic lineup and at trial. The victim's testimony, standing alone, established by a preponderance of the evidence that Miller raped her. See *Jennings v. State*, 277 Ga. App. 159, 163 (3) (626 SE2d 155) (2006). The trial court therefore committed no error in finding that the State sufficiently established that the victim of the second similar transaction had been raped by Miller.

10

(b) The trial court also was authorized to find that the probative value of the similar transaction evidence outweighed its prejudicial effect. Miller's prior rapes were relevant and admissible to prove his bent of mind, course of conduct, and lustful disposition, and to corroborate the victim's testimony of no consent. See *Robbins v. State*, 277 Ga. App. 843, 844-845 (1) (627 SE2d 810) (2006); *Robinson v. State*, 269 Ga. App. 828, 830 (605 SE2d 422) (2004).

> Moreover, the trial court provided jury instructions that limited consideration of the similar transaction evidence to the appropriate purposes and provided guidance so as to diminish its prejudicial impact. Given its relevance and the court's appropriate limiting instruction contemporaneous with its admission and in its jury charge, the probative value of the evidence outweighed its prejudice to [Miller].

(Citations and punctuation omitted.) *Newton v. State*, 313 Ga. App. 889, 892 (1) (b) (723 SE2d 95) (2012).

3. Miller also contends that the trial court erred in limiting his examination of a witness called by the defense to impeach the victim of the second similar transaction. We are unpersuaded.

At trial, the victim of the second similar transaction testified that earlier on the day she was raped by Miller, she was involved in a physical altercation with another

11

woman. She testified that the fight lasted only "a few seconds" and that the injuries she sustained that day (including bite wounds, scratches, and bruises) were the result of the rape, not of her fight with the other woman. The trial court permitted Miller to call the other woman involved in the fight as a witness and have her describe the fight and any injuries sustained by the parties during the fight. According to the trial court, Miller was entitled to have the woman describe the fight itself and any resulting injuries to impeach the second similar transaction victim's testimony that the fight was short and that her injuries resulted from the rape. However, the trial court ruled that Miller could not question the woman about the reason for the fight or what was specifically said during the fight because it would go beyond impeachment and constitute impermissible character evidence.

The trial court did not err in limiting the scope of Miller's examination of the woman involved in the fight with the second similar transaction victim. A trial court's decision to exclude certain testimony that a defendant seeks to introduce for purposes of impeachment is reviewed only for an abuse of discretion. See *Jones v. State*, 283 Ga. App. 631, 635 (3) (642 SE2d 331) (2007). Moreover, "[a] victim's character is rarely relevant for any purpose in a criminal trial," and "[g]enerally, a victim may not be impeached with instances of specific misconduct or prior bad acts." (Citations and

12

punctuation omitted.) *Dean*, 321 Ga. App. at 735 (2). And while "a witness may be impeached by disproving the facts testified to by [her]," *Bentley v. State*, 277 Ga. App. 483, 485 (627 SE2d 61) (2006), testimony regarding the reason for the fight or what was specifically said during the fight would have gone beyond disproving any of the facts to which the second similar transaction victim testified. Consequently, the trial court acted within its discretion in limiting Miller's examination of the woman involved in the fight to prevent a general attack on the character of the second similar transaction victim. See *Jones*, 283 Ga. App. at 635 (3); *Bentley*, 277 Ga. App. at 485.

4. In his final enumeration of error, Miller contends that his trial counsel rendered ineffective assistance. "To establish ineffective assistance, [Miller] must show both that his counsel performed in a professionally deficient manner and that there is a reasonable probability that, but for such deficiency, the result of his trial would have been different." *Smith v. State*, 292 Ga. 620, 621 (2) (740 SE2d 158) (2013). See *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If Miller fails to prove either prong of the test, we need not examine the other prong. *Russell v. State*, 322 Ga. App. 553, 556 (3) (b) (745 SE2d 774) (2013).

(a) Miller first contends that his trial counsel was ineffective for describing the present case as a consensual "sex-for-money transaction" in his opening statement to

13

the jury, but then abandoning that particular theory of the case as the trial proceeded forward and never presenting any evidence to support it. Given the record before us, we conclude that Miller failed to establish that his trial counsel was deficient.

Notably, Miller did not call his trial counsel to testify at the hearing on his motion for new trial. In the absence of such testimony, trial counsel's decision to pursue a different theory of the case from the one initially raised in his opening statement is presumed to be strategic and will be upheld unless "so patently unreasonable that no competent attorney" would have made that decision. *Flemister v. State*, 317 Ga. App. 749, 757 (4) (b) (732 SE2d 810) (2012).

We cannot say that trial counsel's decision to abandon the sex-for-hire defense was patently unreasonable. The record reflects that Miller apparently told a police investigator that he had paid the victim for sex, and so at the outset of the case, his trial counsel may have believed that evidence of sex-for-hire would be heard by the jury, but then made the reasonable strategic decision to alter course when the State chose not to introduce the statement and Miller elected not to testify. Consequently, Miller cannot establish that his trial counsel was deficient, and the trial court committed no error in denying Miller's ineffective assistance claim on the asserted ground. See *Allen v. State*, 293 Ga. 626, 628-629 (2) (c) (748 SE2d 881) (2013) (trial

14

counsel's decision to abandon a particular theory of the case initially raised in opening statement "in light of the evidence offered at trial" constituted reasonable trial strategy).

(b) Miller also contends that his trial counsel was ineffective for failing to introduce evidence that a rape charge brought against him in connection with the second similar transaction had been dead docketed. According to Miller, his counsel should have presented evidence clarifying that the rape charge had been dead docketed and the reason why that had occurred, given that the jury heard testimony during the State's case-in-chief that Miller had been arrested for the rape of the second similar transaction victim.

Miller has again failed to carry his burden of proving ineffective assistance. As an initial matter, his counsel's decision regarding what evidence to introduce is presumed strategic given that there is no evidence in the record to the contrary, and we cannot say that the decision was patently unreasonable. See *Flemister*, 317 Ga. App. at 757 (4) (b). See also *King v. State*, 320 Ga. App. 90, 96 (4) (b) (739 SE2d 654) (2013) (decisions over what evidence to introduce are matters of trial strategy and "provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them") (punctuation and footnote omitted).

15

In any event, to show prejudice resulting from his counsel's failure to introduce evidence of the dead docketing of the rape charge, Miller "was required to offer more than mere speculation that, absent the counsel's alleged error[], a different result probably would have occurred at trial." (Citation and punctuation omitted.) *Baker v. State*, 293 Ga. 811, 815 (3) (750 SE2d 137) (2013). See *Valentine v. State*, 293 Ga. 533, 537 (3) (748 SE2d 437) (2013). And as we have explained,

> [d]ead docketing is a procedural device by which the prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court. Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor. A case is still pending which can be called for trial at the judge's pleasure.

(Citation and punctuation omitted.) *Barrett v. Sanders*, 262 Ga. App. 63, 67 (2) (584 SE2d 676) (2003). Moreover, at the hearing on his motion for new trial, Miller did not present any testimony or documentary evidence explaining why the rape charge relating to the second similar transaction had been dead docketed. Consequently, Miller can only speculate regarding the effect that evidence of the dead docketing of the rape charge would have had on the outcome at trial, and he thus cannot establish the prejudice prong of his ineffective assistance claim.

16

(c) Miller further contends that his trial counsel was ineffective for failing to object on hearsay grounds when the homeowner's daughter who first saw the victim after the attack, the EMT who treated the victim at the scene, a sheriff's deputy, and a police investigator repeated out-of-court statements made by the victim about the rape.[2] But the victim's statements to the homeowner's daughter and EMT were made shortly after the rape occurred and were admissible as part of the res gestae. See former OCGA § 24-3-3; *Milford v. State*, 291 Ga. 347, 348-349 (2) (729 SE2d 352) (2012); *Rowe v. State*, 263 Ga. App. 367, 370 (4) (587 SE2d 781) (2003); *Woods v. State*, 255 Ga. App. 265, 268 (3) (564 SE2d 853) (2002). It follows that any objection to the testimony of the homeowner's daughter and the EMT regarding what the victim said to them would have been futile and cannot provide the basis for an ineffective assistance claim. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citations and punctuation omitted).

---

[2] Miller asserts in his brief that a fifth witness repeated an out-of-court statement by the victim but fails to identify the witness or cite to his or her testimony at trial. Accordingly, any claim of error regarding the testimony of a fifth witness has been abandoned. See Court of Appeals Rule 25 (c) (2).

17

Pretermitting whether the testimony of the sheriff's deputy and police investigator fell within the res gestae exception to hearsay,[3] we conclude that Miller cannot show any prejudice resulting from the admission of the testimony in light of the properly admitted testimony of the homeowner's daughter and EMT. "[T]he erroneous admission of hearsay is harmless where, as here, legally admissible evidence of the same fact is introduced. In such a case, the hearsay is cumulative and without material effect on the verdict." (Citation and punctuation omitted.) *Williams v. State*, 319 Ga. App. 888, 890 (1) (739 SE2d 4) (2013). Because "the failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel," Miller cannot succeed on his claim. (Punctuation and footnote omitted.) *Ashmid v. State*, 316 Ga. App. 550, 558 (3) (b) (730 SE2d 37) (2012).

(c) Lastly, Miller contends that his trial counsel was ineffective for failing to object on hearsay grounds to a nurse's testimony that the emergency room physician who examined the victim found bruising on her ribs. According to Miller, the nurse's

---

[3] We also pretermit whether the testimony of the sheriff's deputy and police investigator could be admitted as prior consistent statements of the victim.

18

testimony constituted inadmissible hearsay because she did not personally observe the bruising but instead relied on what a physician had reported to her.

Again, because Miller's counsel did not testify at the hearing on the motion for new trial, his decision to refrain from objecting to the nurse's testimony is presumed to be strategic and will be upheld "unless so patently unreasonable that no competent attorney" would have made that decision. *Flemister*, 317 Ga. App. at 757 (4) (b). See *Henry v. State*, 316 Ga. App. 132, 134 (2) (729 SE2d 429) (2012) ("The decision of whether to interpose certain objections is a matter of trial strategy and tactics[,] . . . [which] are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted). Here, Miller's counsel could have made the reasonable strategic decision to forego objecting to the nurse's hearsay testimony so as not to draw undue attention to it before the jury. See *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998). Thus, counsel's decision was not patently unreasonable and did not constitute deficient performance.

Nor can Miller establish any prejudice resulting from counsel's decision to forego objecting to the nurse's testimony. The homeowner's daughter who first saw the victim after the attack testified that she saw "red marks like scrapes" on the

19

victim's stomach or side where it looked like she had been kicked. Hence, there was other, properly admitted testimony that the victim had visible injuries consistent with her account of being beaten and raped by Miller. It follows that Miller cannot show that there is a reasonable probability that the nurse's hearsay testimony about the bruising had any affect on the outcome of the trial. See *Marlow v. State*, 192 Ga. App. 670, 671 (4) (385 SE2d 759) (1989) (defendant cannot show prejudice resulting from introduction of hearsay testimony when "[s]ubstantially the same evidence was introduced another way").

*Judgment affirmed. Miller and Ray, JJ., concur.*