**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 12, 2015**

# In the Court of Appeals of Georgia

A14A1882. PALMER v. THE STATE.                                        JE-068C

ELLINGTON, Presiding Judge.

Willie Lee Palmer, Jr. appeals his convictions for family violence battery, OCGA § 16-5-23.1 (f), and two counts of cruelty to children in the third degree, OCGA § 16-5-70 (d) (2). Palmer contends that the trial court erred in (i) not giving his written request to charge on his sole defense of justification, (ii) limiting cross-examination of a witness, (iii) denying his motion for a mistrial, (iv) denying his motion to strike a prospective juror for cause, (v) refusing to admit into evidence a photograph showing his injuries, and (vi) denying his motion for new trial because he received ineffective assistance of trial counsel.

We affirm for the reasons set forth below.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on May 9, 2011, while Palmer, his wife, and their four children were having dinner, Palmer and his wife began having a "discussion" about the shirt he was wearing. Palmer's wife had not seen the shirt before, and she asked him about it because he had previously "cheated" on her. Palmer did not answer her questions about the shirt, and Palmer's wife could tell that Palmer was getting angry. After Palmer's wife took the children upstairs to prepare for bed, she and Palmer began arguing. After several minutes, Palmer's wife heatedly demanded that he leave the house.

After Palmer refused to go, Palmer's wife grabbed a dresser drawer containing some of Palmer's clothes and dumped the clothes over the upstairs bannister. Palmer, while holding their young son, came up the stairs, and Palmer's wife held the drawer between them and again asked him to leave. According to Palmer's wife, Palmer put the child down after climbing the stairs, and he then came towards her, "popped" the drawer out of her hands, and pushed her back onto the sofa while she grabbed his shirt. Palmer straddled his wife on the sofa, and she could not breathe. She reached

_____

[1] *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979).

up and tried to scratch, pinch, or bite Palmer, and "whatever she could do to get up out of that." Palmer punched his wife two times in the head and then, after she called out for help, he punched her again. Palmer's wife's daughter heard the commotion, and she came into the room and saw Palmer hit her mother with a closed fist as he stood over her.

After the altercation, Palmer left the house, and Palmer's wife called the police. The responding deputy testified that Palmer's wife reported being assaulted by Palmer, and he saw that her right eye was swollen and bruised, her upper lip was split on the inside, her lower lip was split, there were marks on her throat and the back of her neck, and her lip was still bleeding. Palmer testified in his defense and said that he did not punch his wife.

1. Palmer contends that the trial court erred in failing to charge the jury on his sole defense of justification. Palmer's trial counsel filed a written request that the trial court instruct the jury on the affirmative defense of justification.[2] During the charge conference the trial court announced its decision not to give the charge. The trial

---

[2] OCGA § 16-3-21 (a) provides, in part, that "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force[.]"

3

court explained that the defense of justification was not raised by the evidence inasmuch as the indictment specified that Palmer punched his wife[3] but Palmer testified that he did not punch his wife. Defense counsel agreed with the trial court that Palmer's defense was not that "I punched her and I was trying to defend myself," but asked that the trial court reserve ruling on whether to give the charge until after closing argument "in case closing argument goes down a totally different road." Following the conclusion of closing argument, and after the trial court instructed the jury, defense counsel expressly represented that she had no exceptions to the charge as given, that is, without any instruction on the affirmative defense of justification. As Palmer acquiesced to the trial court's decision not to charge on justification, the issue of the trial court's refusal to give the requested charge is waived on appeal. See *Gunter v. State*, 316 Ga. App. 485, 487-488 (2) (729 SE2d 597) (2012) (finding that appellant acquiesced to trial court's decision not to give the jury charge). And because Palmer denied punching the victim, he cannot show that the trial court was required to charge justification as his sole defense irrespective of whether he ultimately requested the charge. See *Benefield v. State*, 204 Ga. App. 87 (418 SE2d

---

[3] See, e.g., *Calhoun v. State*, 318 Ga. App. 835, 838 (2) (a) (734 SE2d 809) (2012) (if an indictment charges a defendant with committing a crime in a particular manner, then "the proof must show it so") (punctuation and footnote omitted).

447) (1992) (finding that although "[f]ailure to give a charge on a defendant's sole defense is error regardless of whether the defendant requested a charge on the defense," the trial court did not err in failing to charge on self-defense because the defendant denied that he stabbed the victim) (citation omitted).

2. Palmer contends that the trial court erred in limiting his cross-examination of the responding deputy. "The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." (Punctuation and footnote omitted.) *Farley v. State*, 314 Ga. App. 660, 665 (3) (725 SE2d 794) (2012). However, the trial court may restrict cross-examination to the extent the inquiry is not relevant or material, "and such restriction lies within the discretion of the trial court which will not be disturbed on appeal unless manifestly abused." (Citation and punctuation omitted.) *Stevens v. State*, 213 Ga. App. 293, 294 (2) (444 SE2d 840) (1994).

The deputy who spoke with Palmer's wife testified that there are additional forms that are to be filled out in the context of a domestic violence report. In reference to the forms, defense counsel asked:

> [T]here's an additional form where it talks about the evidence that is collected and whatnot and that sort of thing, and I think there's a thing

that talks about domestic violence. And in this case, do you recall checking the box that says both parties had a history of prior domestic violence?

The trial court sustained the prosecutor's objection to the question, noting that "you really don't get to slander the victim's character."

"[A] victim's character is rarely relevant for any purpose in a criminal trial." (Citation and punctuation omitted.) *Miller v. State*, 325 Ga. App. 764, 769 (3) (754 SE2d 804) (2014). See former OCGA § 24-2-2 ("The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.").[4] The trial court could conclude that a description of Palmer's wife as having a "history" of domestic violence addressed the victim's general character and was not relevant to the proceeding. Further, Palmer failed to make a prima facie showing of justification such that his wife's general reputation for violence was relevant. See *Chambers v. State*, 308 Ga. App. 748, 750 (1) (708 SE2d 651) (2011) (victim's general reputation for violence admissible if "the defendant

---

[4] This case was tried under the old Evidence Code. Under the new Evidence Code, which applies to trials beginning on or after January 1, 2013, the relevance of character evidence is generally governed by OCGA § 24-4-404.

6

claims he or she justifiably used force in self-defense, to show that the defendant was in a state of reasonable fear at the time of the alleged offense against the victim") (citations omitted). We find no abuse of the trial court's wide range of discretion in controlling cross-examination. See *Stevens v. State*, 213 Ga. App. at 294 (2).

3. Palmer claims that the trial court erred in denying his motion for a mistrial after Palmer's wife testified that Palmer had sold illegal drugs. During direct examination of Palmer's wife, the prosecutor established that Palmer was not working and then asked if she was the sole provider for the family. Palmer's wife responded no, and stated Palmer was the provider. The following exchange then occurred:

Q: How was [Palmer] providing for you, if he wasn't working?

A: He sold drugs.

Palmer objected and moved for a mistrial. The trial court ruled that he would instruct the jury to disregard Palmer's wife's response, but that he would reserve ruling on the motion for mistrial. The trial court then instructed the jury that it should disregard Palmer's wife's last answer. The trial court also informed the jury that "[t]here's no allegation in this case that it involves any sort of illegal narcotics." Following the conclusion of the State's case, Palmer's counsel, after conferring with

7

Palmer, announced that he was not going to renew his motion for mistrial.[5] Because Palmer did not renew his motion for mistrial after the trial court took curative action with regard to the victim's testimony, this claim of error is not preserved for purposes of appeal. See, e.g., *Izzo v. State*, 265 Ga. App. 143, 144 (2) (592 SE2d 915) (2004) (holding that defendant's failure to renew either objection or motion for mistrial after trial court's curative action waived enumeration of error on appeal).

4. Palmer also claims that the trial court erred in denying his motion to strike a juror for cause. The individual questions and responses as to the prospective juror at issue, Ms. M., were not transcribed. The transcript of the bench conference upon Palmer's motion to strike the juror shows that something "awful" had happened to Ms. M. According to Palmer's argument, Ms. M. had "twice said that she wouldn't be able to put it aside, while listening to the evidence, and coming to a decision." The prosecutor responded that Ms. M. "said [that] she could give [Palmer] a fair trial and that she could listen to the evidence in this case," and that, while she could never forget the "awful thing," the prospective juror would listen to the evidence and make a decision based on the facts. The trial court then denied the motion to strike.

---

[5] Palmer then testified in his defense, following which the State introduced into evidence Palmer's prior conviction for the sale of cocaine.

For a potential juror to be excused for cause, it must be shown that he or she holds an opinion "so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." (Citation and punctuation omitted.) *Mosely v. State*, 269 Ga. 17, 19 (2) (495 SE2d 9) (1998). The decision to strike a juror for cause is within the trial court's discretion and will not be set aside absent a manifest abuse of that discretion. See *Brown v. State*, 295 Ga. 804, 808 (4) (764 SE2d 376) (2014). As we cannot find from the limited record that Palmer established that Ms. M. would not be able to decide the case based upon the evidence or the court's charge on the evidence, Palmer does not show that the trial court abused its discretion in denying his motion to strike Ms. M. for cause.

5. Palmer further maintains that the trial court erred in denying the admission into evidence of a photograph detailing his injuries. "As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation omitted.) *Sullivan v. State*, 242 Ga. App. 839, 840-841 (3) (531 SE2d 367) (2000).

9

Palmer testified that he left his house on the night of the incident and went to his mother's home where a picture was taken of him. Palmer then presented for identification a photograph of the upper torso of a man, with the face partially excluded, showing scratches to the chest. The prosecutor objected to the introduction of the photograph because, among other things, she had not seen the photograph until that day. Defense counsel represented that the photograph had not been served on the State because she also had not had the photograph in her possession until that day. Rather, defense counsel said, Palmer "had it with him at the jail this whole time." The trial court found that the photograph "should have been served." Defense counsel responded, "I agree." The trial court ruled that the photograph would not be admitted.

It appears from this exchange that the trial court refused to admit the photograph because Palmer, having opted into reciprocal discovery,[6] had not made it available to the State at least five days before trial as required by OCGA § 17-16-4 (b) (1),[7] and that the trial court sanctioned the defense by excluding the evidence

---

[6] See OCGA § 17-16-2 (a).

[7] OCGA § 17-16-4 (b) (1) provides:

The defendant . . . no later than five days prior to trial . . . shall permit the prosecuting attorney at a time agreed to by the parties or as ordered by the court to inspect . . . photographs . . . which are within the

10

under authority of OCGA § 17-16-6.[8] Palmer argues that the trial court erred because there was no basis for the trial court to exclude the photograph under OCGA § 17-16-6 in that the State made no showing that it had been prejudiced or that Palmer had acted in bad faith.[9] See *Ware v. State*, 298 Ga. App. 232, 234 (2) (679 SE2d 797) (2009) (Under OCGA § 17-16-6, "the sanction of exclusion is reserved for instances in which the trial court finds prejudice to the state and bad faith by the defense.") (citations and punctuation omitted). In this case, we conclude that any error by the trial court in excluding the photograph was harmless. The photograph is cumulative

possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in the defense's case-in-chief or rebuttal at the trial.

[8] OCGA § 17-16-6 provides, in applicable part:

If at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of [the reciprocal discovery law], the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed[.]

[9] Palmer also suggests that the trial court erred in refusing to admit the photograph because it was properly authenticated. It does not appear, however, that the trial court excluded the photograph for lack of a proper foundation.

11

of both Palmer's testimony that his wife scratched him as well as of the testimony of Palmer's wife that she tried to scratch Palmer. See, e.g., *Brown v. State*, 268 Ga. App. 24, 27-28 (2) (601 SE2d 405) (2004) (Because a witness's letters were cumulative of the witness's trial testimony the trial court's erroneous exclusion of the letters as a discovery sanction was harmless.).

6. Lastly, Palmer contends that the trial court erred in denying his motion for new trial because he received ineffective assistance of trial counsel. "In order to succeed on his claim of ineffective assistance, [Palmer] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." (Citation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). In reviewing the trial court's decision, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Palmer claims that his trial counsel was ineffective because she did not object to the trial court's reading of the unredacted indictment to the jury. The record shows that the trial court read the indictment to the jury, including that Palmer was

12

charged "with the offense of battery, Family Violence Act, second or subsequent offense." OCGA § 16-5-23.1 (f) (2) provides for misdemeanor punishment for the first conviction of family violence battery and felony punishment for the second or subsequent conviction. The indictment was properly worded because, where "the nature of the offense changes from a misdemeanor to a felony through repetition, . . . the indictment must reflect the maximum punishment to which the defendant can be sentenced." (Punctuation and footnote omitted.) *White v. State*, 265 Ga. App. 302, 303 (1) (596 SE2d 9) (2003). However, the recidivism allegation was not an element of the crime of family violence battery,[10] and "it is error for the jury to be made aware of the prior convictions during the guilt/innocence phase of the trial where there is no other legal basis for the consideration thereof." (Punctuation and footnote omitted.) *White v. State*, 265 Ga. App. at 304 (1) (finding that the trial court erred in reading the indictment to the jury without redacting the references to the appellant's prior convictions).

---

[10] "If the offense of battery is committed between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons living or formerly living in the same household, then such offense shall constitute the offense of family violence battery." OCGA § 16-5-23.1 (f).

13

Here, the State notified Palmer before trial that it intended to introduce evidence of a prior incident in which he had pushed and held his wife down, thereby causing bleeding and scratching on her face. The State and Palmer agreed at the pretrial conference that the incident was admissible as a prior difficulty. See *Thompson v. State*, 295 Ga. 96, 101-102 (3) (b) (757 SE2d 846) (2014) (finding that under Georgia's old Evidence Code, a defendant's prior acts toward the victim were admissible).[11] Palmer's wife then testified to a previous occasion in which Palmer had held her on the ground and hit her, causing her face to bleed. She further testified that Palmer pled guilty and was convicted of family violence battery arising out of that incident, and a certified copy of the conviction was entered into evidence. See *Brown v. State*, 278 Ga. 810, 811 (4) (607 SE2d 579) (2005) (approving use of certified copy of conviction as evidence of prior difficulties between the defendant and the victim). Because the jury was legitimately made aware that Palmer had previously been convicted of family violence battery, there is no reasonable probability that the outcome of the trial would have been different if trial counsel had objected to the trial court's reading of the unredacted indictment to the jury. See *Favors v. State*, 182 Ga.

---

[11] "Under the new Evidence Code, which applies to trials beginning on or after January 1, 2013, the admissibility of . . . '[e]vidence of other crimes, wrongs, or acts' is governed by OCGA § 24-4-404 (b)." Id. at 102 (3) (b) n.5.

14

App. 179, 180 (1) (355 SE2d 109) (1987) (the trial court's failure to redact indictment's reference to prior convictions "was of little if any consequence" where the jury was legitimately made aware of the prior convictions). As Palmer cannot show prejudice, his trial counsel was not ineffective as alleged.

(b) Palmer also claims that his trial counsel was ineffective in failing to comply with the reciprocal discovery provisions of OCGA § 17-16-1 et seq. because she did not ensure that the photograph showing scratches on Palmer's torso, as discussed in Division 5, supra, was properly provided to the State before trial. Even if we assume, without deciding, that defense counsel was deficient in failing to ensure that the photograph was served on the State as alleged, photographic evidence that Palmer had been scratched was cumulative of the testimony of both Palmer and his wife. There is no reasonable probability that but for defense counsel's alleged error that the outcome of the trial would have differed. See *Schofield v. Holsey*, 281 Ga. 809, 814 (II) (642 SE2d 56) (2007) (holding that the defendant was not prejudiced by the omission of "largely cumulative" evidence).

(c) Palmer argues that his trial counsel was deficient in that she failed to object to the trial court's failure to charge the jury on justification. But such an objection would have had no merit, and defense counsel was not ineffective in failing to pursue

15

it. See *Bradley v. State*, 292 Ga. 607, 614 (5) (740 SE2d 100) (2013) (noting that "the failure to make a meritless objection cannot amount to ineffective assistance").

To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge. See *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). "Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." (Citation omitted.) Id. Palmer testified that he did not punch his wife, but that he tried to push her away and hold her off. Although the jury was entitled to believe Palmer's wife's testimony that he punched her repeatedly in the face, her testimony showed that he did so while he was straddling her on the sofa and she was struggling to escape. Under no construction of the evidence could the jury conclude that if Palmer punched his wife he did so in self defense. "[I]t is not error to refuse a justification charge where there is no evidence to support it." (Citation omitted.) *Reese v. State*, 289 Ga. 446, 447 (2) (711 SE2d 717) (2011).[12]

_____

[12] See *Hicks v. State*, 287 Ga. 260, 261-262 (2) (695 SE2d 195) (2010) (as no evidence supported a finding that the appellant acted in defense of self or others, the trial court properly refused his request to charge the jury on justification under OCGA § 16-3-21 (a)); *Broussard v. State*, 276 Ga. 216, 217 (2) (576 SE2d 883) (2003) (although the jury could disbelieve the appellant's statement that he did not fire any weapon and credit the prosecution's evidence identifying appellant as the shooter, no construction of the evidence would support a finding that he shot in self defense, and

(d) Even assuming that trial counsel's performance was deficient in more than one respect, we conclude that trial counsel's alleged errors, taken together, do not show a reasonable probability that, but for counsel's errors, the results of the proceedings would have differed. See *Owens v. State*, 324 Ga. App. 198, 206 (3) (749 SE2d 783) (2013).

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*

---

the trial court did not err in refusing to give an instruction on that issue).

17