**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2018**

# In the Court of Appeals of Georgia

A18A0424. EDGE v. THE STATE.

BETHEL, Judge.

Timothy Dwight Edge appeals the denial of his motion for a new trial following his conviction for one count of peeping Tom.[1] Edge argues that (1) there was insufficient evidence to support the verdict, (2) juror misconduct contributed to his guilty verdict, (3) the trial court erred by admitting certain evidence pursuant to Rule 404 (b), and (4) he received ineffective assistance. Although we find that the evidence was sufficient to support the verdict, we reverse the denial of Edge's motion for a new trial because the State failed to overcome the presumption of harm resulting from juror misconduct.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of

---

[1] OCGA§16-11-16.

innocence." *Knowles v. State*, 342 Ga. App. 344, 346 (1) (801 SE2d 582) (2017) (citation omitted). So viewed, the evidence shows that Edge lived with his father next to Ms. Storey and her son for a number of years. After Edge's father passed away, Edge threatened to sue the Storeys for damage to a trailer that occurred after tree limbs fell onto his property.

In the following years, Edge became increasingly hostile toward the Storeys. Edge would yell at the Storeys and their children when they went outside, make threatening motions toward Mr. Storey when he would visit Ms. Storey's house, and would shoot a taser gun toward Ms. Storey's dogs to scare them. Edge also placed a camera on his property and aimed it at Ms. Storey's front porch. Edge was seen hiding in bushes and watching people, and a neighbor saw Edge standing on Ms. Storey's picnic table, staring into a window of her house. A second neighbor saw Edge standing on the Storeys' front porch looking into their window at approximately 4:30 a.m. Edge denied these allegations.

Edge was indicted on one count peeping Tom,[2] and a jury found Edge guilty.

---

[2] Edge was also indicted on three counts of possession of a firearm by a convicted felon, but these charges were dismissed.

Following the trial, one of the jurors told his wife (who worked in the superior court clerk's office) that some of the jurors may have used their cell phones during deliberations to look at maps of the area to see the distance between and orientation of the houses involved. The juror's wife alerted the prosecutor who informed Edge's defense counsel.

Edge filed a motion for a new trial. At the hearing on Edge's motion, three jurors testified that two or three other unnamed jurors used their cell phones to attempt to view maps showing the distances between and relative orientation of homes in Edgewood's neighborhood. One of the jurors who attempted to pull up information on the distances between the properties testified that he was unable to access any such information. However, that juror testified that another juror was able to pull up a picture of some sort that showed a property line. This information was shared with several other jurors in the room, and some discussion occurred about the distance between the properties. The three jurors who testified at the motion hearing stated that this conduct did not affect their verdicts and that they were unsure of whether any of the other jurors changed their minds as a result of the information. The juror who was able to retrieve the information on his phone and who shared this

information with the other jurors was not called to testify. The trial court denied Edge's motion, and this appeal followed.

1. Edge contends the evidence was insufficient to support the jury's verdict. We disagree. The term "peeping Tom" is defined as "a person who peeps through windows or doors . . . for the purpose of spying upon or invading the privacy of the persons spied upon and the doing of any other acts of a similar nature which invade the privacy of such persons." OCGA § 16-11-61 (b).

In the present case, the record shows that Edge was observed peering into the windows of Ms. Storey's house on two separate occasions. While Edge challenges the reliability of the witness testimony to this effect and inconsistencies in the evidence, these are issues for the jury to resolve. *See Jaber v. State*, 243 Ga. App. 562, 563 (533 SE2d 767) (2000) ("It is the function of the jury, and not this Court, to resolve conflicts in the evidence. This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses." (footnote omitted)).

Construed in a light most favorable to support the jury's verdict, the evidence was sufficient to authorize a rational trier of fact to find Edge guilty beyond a

4

reasonable doubt of peeping Tom. *See Smith v. State*, 238 Ga. App. 605, 605 (1) (520 SE2d 13) (1999); *Emerson v. State*, 217 Ga. App. 284, 285 (458 SE2d 657) (1995).

2. Edge next argues that juror misconduct contributed to the conviction. We agree that a reasonable possibility exists that juror misconduct could have contributed to the conviction and accordingly we reverse the trial court's denial of Edge's motion for a new trial.

"As our Supreme Court recognized well over a century ago, when a jury is selected and sworn to try the criminally accused, the law 'contemplates that no outside influence shall be brought to bear on the minds of the jury, and that nothing shall occur outside of the trial which shall disturb their minds in any way.'" *Chambers v. State*, 321 Ga. App. 512, 518 (739 SE2d 513) (2013) (citing *Shaw v. State*, 83 Ga. 92, 100 (1) (9 SE 768) (1889)) (physical precedent only). A juror introducing extrajudicial evidence "essentially becomes an unsworn witness against the defendant in violation of the Sixth Amendment." *Satterwhite v. State*, 235 Ga. App. 687, 688 (509 SE2d 97) (1998) (citation omitted) (physical precedent only).

> And where, as here, misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and the *onus* is upon the State to remove this presumption by proper proof. That is, the burden is on the prosecution to prove beyond a reasonable doubt that no harm

5

has occurred. A jury verdict will not be upset solely because of juror misconduct, however, unless such conduct was so prejudicial that the verdict must be deemed inherently lacking in due process. Put another way, a new trial will not be granted unless there is a reasonable possibility that the improper information collected by jurors contributed to the conviction.

*Chambers*, 321 Ga. App. at 518-519 (cleaned up) (emphasis in original). *See also Hammock v. State*, 277 Ga. 612, 613-614 (2) (592 SE2d 415) (2004). The State must overcome the presumption of harm beyond a reasonable doubt, "and we must determine whether the juror misconduct is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injury." *Woodruff v. State*, 339 Ga. App. 707, 709-710 (3) (792 SE2d 471) (2016) (citation omitted).

In this case, to remove the presumption of prejudice that arose as a result of juror misconduct, the State introduced testimony from three of the jurors at the new trial hearing. Those jurors testified that two or three other unnamed jurors used their cell phones to attempt to see the distances and lines of sight between the homes in the neighborhood, and that one was actually successful in doing so. However, the juror who successfully pulled up the information on the distances between the properties

6

did not testify at the new trial hearing, and it is unknown whether the information affected his decision to convict. Nor is it known whether this information affected the decision of those other jurors with whom this information was shared. Finally, we do not know whether this information, which was sought to determine the weight and credibility of the key testimony, was viewed before or after the jury asked the trial court whether it could render a hung verdict. Thus, with respect to those jurors who either obtained or viewed the information on the distance and, relatedly, line-of-sight between the properties, a reasonable possibility exists that the information could have contributed to Edge's conviction.

To be clear, we are not suggesting that in every case where juror misconduct is alleged, the State is under an obligation to call each individual juror. Rather, because the State did not call the juror known to have engaged in the misconduct in question, the State did not provide sufficient proof to overcome the presumption of harm beyond a reasonable doubt. *See Hammock*, 277 Ga. at 614 (2).[3] *See also Lloyd*

---

[3] Although not expressly acknowledged therein, the Supreme Court's decision in *Hammock* calls into question the continuing viability of *Butler v. State*, 270 Ga. 441, 445 (2) (511 SE2d 180) (1999). In *Butler*, the Supreme Court did not specifically consider whether there was a reasonable possibility that the improper information collected by jurors contributed to the conviction when determining whether the specific facts of that case establishing juror misconduct warranted a new trial. Nor did *Butler* address the question of presumed harm.

*v. State*, 339 Ga. App. 1, 9 (3) (792 SE2d 445) (2016) (physical precedent only); *Chambers*, 321 Ga. App. at 520-521 (1). *Compare Brown v. State*, 275 Ga. App. 281, 283-284 (1) (620 SE2d 394) (2005) (juror misconduct in viewing MapQuest information not so prejudicial as to warrant a new trial where trial court questioned every juror to determine if the information, which was cumulative of that admitted at trial, influenced their verdict) (physical precedent only); *Green v. State*, 240 Ga. App. 377, 380-381 (7) (523 SE2d 581) (1999) (juror visit to scene not so prejudicial as to require a new trial where juror told others that it was not helpful, and where juror who made the visit testified at a hearing that she based her decision only on the evidence presented at trial). For this reason, we are required to reverse the trial court's denial of Edge's motion for a new trial.

3. Edge next argues that the trial court erred by allowing in evidence under OCGA § 24-4-404 (b) that put Edge's character in issue. Because this evidentiary issue is likely to be raised again upon retrial, we address it here.

Under OCGA § 24-4-404 (b), evidence of other "crimes, wrongs, or acts" may be admissible to show "the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim." We

8

review a trial court's decision to admit evidence of prior difficulties between the parties for a clear abuse of discretion. *See Pittman v. State*, 343 Ga. App. 580, 581 (807 SE2d 492) (2017).

In denying Edge's argument, the trial court found that the prior relationship between the parties formed a basis for the allegation of peeping Tom and helped to explain why the offense occurred. We agree that the evidence regarding Edge's behavior and interactions with the Storeys and other neighbors was admissible for these purposes. *See Palmer v. State*, 330 Ga. App. 679, 686 (6) (a) (769 SE2d 107) (2015); *accord Cunningham v. State*, 243 Ga. App. 770, 771 (1) (533 SE2d 735) (2000) ("Evidence of prior difficulties between the parties is admissible if there is a logical, probative connection between the difficulties and the crimes charged." (citation and punctuation omitted)). Edge's enumeration is without merit.

4. Because our decision above will result in a new trial for Edge, we need not address Edge's remaining arguments that he received ineffective assistance at trial.

*Judgment reversed. Ellington, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

9